PUBLIC UTILITIES COMMISSION
*vs.*
VAUGHN O. GALLOP

RE: CLARIFICATION OF CONTRACT CARRIER PERMIT 207

Cumberland.   Opinion, October 20, 1948

*Frank M. Libby,* for Public Utilities Commission.

*Nathan Solman,*
*Scott Brown,* for respondent, Vaughn O. Gallop.
*George Barnes,* for Cole's Express and Maine
Freightways.
*Harry L. Milliken,* for E. G. Congdon.

SITTING: STURGIS, C. J., THAXTER, MURCHIE, TOMPKINS, FELLOWS, MERRILL, JJ.

MERRILL, J. This case is before us on exceptions to certain rulings of the Public Utilities Commission. The proceedings before the Public Utilities Commission were instituted by the commission under R. S., Chap. 44, Sec. 21, Par. III, for the clarification of the permit to operate as a contract carrier held by Vaughn O. Gallop, doing business as Houlton Truck Express.

The original permit was issued by the commission November 15, 1933 to Charles O. McDonald, as a matter of right under the so-called grandfather clause found in P. L. 1933, Chap. 259, Sec. 5, Par. C. This permit was duly kept in force by renewals. With the consent of the commission obtained on February 26, 1946, it was transferred to Vaughn O. Gallop doing business as Houlton Truck Express, and on the same day the permit in question was issued to Gallop by the commission.

August 30, 1946 the proceedings for clarification of Gallop's permit were instituted by the commission and notice ordered thereon. Hearing was held on October 10, 1946 and by adjournment continued on October 16 and 17, 1946. The respondent Gallop appeared in person and was represented by counsel. The commission was represented by its examiner, acting as its counsel, and Cole's Express and Maine Freightways were represented by counsel, as was F. G. Congdon.

During the progress of the hearing several exceptions (numbered I-II-III-IV-V, in the Bill of Exceptions) were noted to rulings of the commission. In respondent's brief exception V was expressly abandoned and need not be considered.

Exception I is to the action of the commission allowing the participation by counsel of other carriers in the proceedings.

Exceptions II, III and IV are to the exclusion of evidence by the commission.

It is to be noted that there is no general or express exception to the final ruling (decree or order) of the commission.

Before considering the respondent's several exceptions, the general question of exceptions to rulings of the Public Utilities Commission and their determination by this court, should be examined.

This court acting as the Law Court is of limited jurisdiction. As such, the Law Court is a Statutory Court. As such, it performs those duties and exercises those powers only which are conferred upon it by statute. "The court cannot properly exceed its statutory powers, nor dispense with the conditions imposed." *Stenographer Cases,* 100 Me. 271, 275; 61 A. 782, 784. The Law Court is without jurisdiction except in cases brought before it *in the manner provided by statute;* viz: through the statutory course of procedure. *Cole* v. *Cole,* 112 Me. 315, 316; 92 A. 174; *Edwards, Appellant,* 141 Me. 219; 41 A. (2nd) 825.

The power of this court to review proceedings of the Public Utilities Commission on exceptions is conferred upon it by R. S., Chap. 40, Sec. 66. So much of that section as is germane to the question now under consideration reads as follows:

> "Questions of law may be raised by alleging exceptions to the ruling of the commission on an agreed statement of facts, or on facts found by the commission, and such exceptions shall be allowed by the chairman of the commission. . . ."

This was the language of the original act, P. L. 1913, Chap. 129, Sec. 53, and has been continued without change to the present day.

With respect to the Public Utilities Commission and the power of review of its findings by the Law Court, we said in *Hamilton* v. *Power Co.,* 121 Me. 422, 423; 117 A. 582, 583:

> "Acting within its powers, its orders and decrees are final except as a review thereof by the regularly constituted courts is authorized under the Act creating the Commission.
>
> Such and the only power of review is found in R. S., Chap. 55, Sec. 55, as amended by Chap. 28, P. L. 1917, and relates only to questions of law. 'Questions of law may be raised by alleging exceptions to the rulings of the Commission on an agreed statement of facts, or on facts found by the Commission.'

The facts on which the rulings of the Commission are based must be either agreed to by the parties or be found by the Commission. Facts thus determined upon are not open to question in this court, unless the Commission should find facts to exist without any substantial evidence to support them, when such finding would be open to exceptions as being unwarranted in law."

See also *Utilities Commission* v. *Water Commissioners*, 123 Me. 389; 123 A. 177.

We held in *Stoddard* v. *Public Utilities Commission*, 137 Me. 320; 19 A (2nd) 427, that the remedy by way of exceptions provided R. S., Chap. 40, Sec. 66, is available in proceedings under R. S., Chap. 44, Sec. 21, Par. III for clarification of a permit issued under the grandfather clause so-called.

R. S., Chap. 40 is silent on the rules of procedure governing bills of exception and their form, except as provided in Sec. 70 which reads in part as follows:

"In all actions and proceedings arising under the provisions of this chapter, all processes shall be served and the practice and rules of evidence shall be the same as in civil actions in the superior court except as otherwise herein provided . . ."

This court said in *Hamilton* v. *Power Co., supra:*

"A bill of exceptions under this statute should accord with the general practice in the courts and comply with the requirements laid down in *Jones* v. *Jones,* 101 Me. 447, 450; 64 A. 815; 115 Am. St. Rep. 328; *Feltis* v. *Power Co.,* 120 Me. 101; 112 A. 906. It should not be general but should specifically set out in what respect the party excepting is aggrieved."

In the case, *In Re The Samoset Company,* 125 Me. 141, 143; 131 A. 692, 693, we said:

"This court desires to further add, that the form of a bill of exceptions in such cases should, so far as possible, conform to the practice in the courts

of law, Sec. 59, Chap. 55, R. S., *Hamilton* v. *Water Co.*, 121 Me. 422; 117 A. 582, and should be a summary statement of the contentions of the excepting party and, without referring to other documents or the evidence, except in cases where it is claimed that facts were found without any evidence, should show wherein the excepting party was aggrieved by the alleged rulings."

It is to be noted that the statute, R. S., Chap. 40, Sec. 66 provides how questions of law may be raised, viz., by alleging exceptions to the ruling of the commission (1) *"on an agreed statement of facts,"* (2) *"or on facts found by the commission,"*.

o

The foregoing provision presupposes that before an exception can be taken of which this court will have cognizance, there must either be an agreed statement of facts, or facts found by the commission, and a ruling upon the one or the other as the case may be. The ruling thus referred to, therefore, must be the final ruling which disposes of the case. In other words, the exceptions which are to come before this court are to the ruling, to wit, the order or decree of the commission upon the facts in the case. It is this ruling which we must find erroneous in law before we can sustain exceptions thereto. This ruling may be erroneous in law for any one of many reasons. Some may be inherent in the ruling itself, such as the making of an order or decree beyond the authority of the commission. Others may be errors arising during the conduct of the hearing, such as the reception of inadmissible evidence and basing the decree thereon, or the exclusion of material evidence and failure to give effect to facts which could be proven thereby in making the order or decree. These and many other things can give rise to orders and decrees erroneous in law. It is to such erroneous rulings, (orders or decrees) made upon either agreed statements of facts or facts found by the commission and, *to such rulings only,* that the statutory right of exception is given.

With respect to alleged erroneous rulings of law during the progress of the proceeding, it might be argued that strict compliance with the statute requires that the bill of exceptions set forth an exception *eo nomine* to the ruling (order or decree) on "the facts found by the commission," and that such alleged erroneous rulings during the progress of the proceeding be set forth as reasons for the exception. A literal interpretation of the language of the statute lends color to such view. On the other hand, if the purpose of the statute, which is to afford correction of rulings (orders or decrees) erroneous in law, is taken into consideration, mere form in the drafting of a bill of exceptions should not be allowed to defeat the purpose of the statute, but form should yield to substance. An exception noted to a ruling of the commission at any stage of the proceedings, if the same be allowed and certified to this court after final decree of the commission, may be treated in effect as an exception to such ruling (order or decree) itself, with the preliminary ruling alleged as the reason therefor. If the preliminary ruling be erroneous in law, and is prejudicial in the sense of being the proximate cause of an erroneous ruling (order or decree) on facts found by the commission, it is ground for vacating the final decree. An exception so certified will not have the effect of subjecting the final decree to general attack upon any other grounds than alleged therein. Furthermore, the bill of exceptions must show wherein the exceptant is aggrieved by the ruling of which he complains, and in addition he has the burden of affirmatively showing that he has suffered substantial prejudice thereby. While we have not before stated the above rule as to manner of alleging exceptions to preliminary rulings, and while the exact question, as such, has not heretofore been specifically called to the attention of this court for decision, the uniform course of action by the court, with respect to exceptions under this statute, has been in accord therewith. In *Hamilton* v. *Power Co., supra,* after quoting so much of the statute as reads as follows: "Questions of law may be raised by alleging exceptions to the rulings of the commission on

agreed statement of facts, or on facts found by the commission," we said in the next succeeding paragraph:

> "The facts on which the rulings of the commission are based must be either agreed to by the parties or be found by the commission. Facts thus determined upon are not open to question in this court, unless the commission should find facts to exist without any substantial evidence to support them, *when such finding would be open to exceptions as being unwarranted in law.*" (Italics ours.)

This language we quoted with approval in *Utilities Commission* v. *Water Commissioners, supra.*

In *Damariscotta-Newcastle Water Company* v. *Itself,* 134 Me. 349; 186 A. 799 we said:

> "There are three exceptions before this court. The first is to the exclusion of evidence offered to show the price for which the utility was purchased in 1924 by its present owner. The second is to the failure of the commission to consider such price. These two exceptions are substantially the same and will be considered together. The third exception is to the order of the commission concerning the amount to be paid by the Town of Damariscotta for fire service."

In that case there was no express exception to the decree itself with the exclusion of the evidence assigned as a reason therefor. The exception was taken to the exclusion of the evidence, and was considered by this court. In that case we further said:

> "Though it is true that under the provisions of R. S. 1930, Chap. 62, Sec. 67, in hearings before the Public Utilities Commission the ordinary rules of evidence apply, yet the mere erroneous admission or exclusion of evidence will not invalidate an order of the commission. Substantial prejudice must be affirmatively shown. See *Northern Pacific Railway Company* v. *Department of Public Works of Washington,* 268 U. S., 39, 44; 45 S. Ct. 412; 69 L. Ed. 836; *United States* v. *Abilene & Southern Railway Company,* 265 U. S., 274, 288; 44 S. Ct. 565; 68 L. Ed. 1016."

We then proceeded to overrule the exceptions not to dismiss them. The latter action is appropriate when the bill of exceptions is not properly before the court.

From this case it is seen that we have in effect treated exceptions to alleged errors in the reception or rejection of evidence as within our jurisdiction to hear and determine.

Guided by these principles of law, we have considered the various exceptions alleged by the respondent.

## Exception I

There is no merit in this exception. These parties appeared in response to notice by the commission. It is within the power of the commission to allow appearance and participation in a clarification hearing "by such persons, firms and corporations as it deems necessary." See R. S., Chap. 44, Sec. 21, Par. III; P. L. 1933, Chap. 259, Sec. 5, Par. C.

## Exception II

The second exception is based upon the exclusion of exhibit No. 2, which was the entire record of the hearing before the commission on the application for transfer of the McDonald permit to Gallop. It was offered for the alleged purpose of showing McDonald's and Gallop's then understanding of the scope of the business which was being transferred; also for showing the understanding with respect thereto of Mr. Libby, the examiner for the commission who was conducting the hearing.

The rule adopted by this court as to the form of bills of exceptions in this class of cases was clearly enunciated in *Hamilton* v. *Power Company, supra,* in the portion of the decision heretofore quoted herein. It was recognized and restated in *In Re The Samoset Company, supra.* The bill of exceptions, except in cases where it is claimed that facts were found without any evidence, *should show wherein the*

*excepting party was aggrieved by the alleged rulings.* In the latter case we announced "This court should not be compelled to search through volumes of testimony of exhibits and schedules and the findings of the commission, with which these cases are usually replete, to ascertain what rulings were made, *or wherein the party excepting was aggrieved.*" (Italics ours.)

Where the alleged erroneous ruling is to the admission or exclusion of evidence, not only must the *bill of exceptions* show wherein the excepting party was aggrieved thereby, but he must also, as a matter of substantive law, show substantial prejudice by reason of such admission or exclusion. We said in *In Re Damariscotta-Newcastle Water Co.,* v. *Itself, supra:*

> "Though it is true that under the provisions of R. S. 1930, Chap. 62, Sec. 67, in hearings before the Public Utilities Commission the ordinary rules of evidence apply, yet the mere erroneous admission or exclusion of evidence will not invalidate an order of the commission. Substantial prejudice must be affirmatively shown."

An examination of the rejected exhibit shows that its rejection does not constitute reversible error. It was irrelevant for the purpose offered. It did not bear out the contention of the respondent as to its contents. Its exclusion was non-prejudicial.

## Exceptions III and IV

Both of these exceptions are directed to the exclusion of evidence of, or related to, operations by McDonald as a contract carrier subsequent to the test period, March 1, 1932 to June 30, 1933.

Before consideration of the exceptions themselves, it is necessary that we examine the nature and purpose of the proceeding in which the excluded evidence was offered.

The purpose of the proceeding before the commission was the clarification of the respondent's permit. "Clarification

means that the thing exists but is uncertain and cloudy but never non-existent." *Chisholm* v. *U. S.*, 19 Fed. Supp., 274, 279; 85 Ct. Cl. 199. The clarification proceeding assumes the existence of rights. It is instituted to make clear what those existing rights are by granting a new definitive permit, which shall neither extend nor abridge that which in reality already exists. In determining the issue and making a definitive permit, the commission under the statute was to consider the evidence taken in the original hearing and evidence to be submitted in the "further" hearing. The statute, R. S., Chap. 44, Sec. 21, Par. III provides that at the "further" hearing "evidence of regular operation as a contract carrier from March 1, 1932 to June 30, 1933, may be submitted, and the carrier may supplement same by evidence of regular operation subsequent to said period,".

The question of the admissibility of evidence raised by exceptions III and IV depends upon the interpretation of what is meant by the phrase "may supplement same by evidence of regular operation subsequent to said period." Obviously, this provision was not designed to open the door so widely as in effect to extend the test period itself. Neither was it the purpose to enlarge the rights originally held by adding thereto new, different and unrelated transportation services which were subsequently performed. So to conclude would be to sanction the enlargement of the carrier's right as a result of illegal operations by him in violation of the "grandfather" permit. Its true purpose was to clarify the scope of the original permit.

In order to throw light upon the true meaning of the original permit, the subsequent operation must be a regular operation and it should be an operation based upon, connected with, and explanatory of the services performed during the test period. To meet this test, and to make the evidence of subsequent regular operation admissible, the groundwork therefor should be laid by the introduction of sufficient evidence of operations during the test period so that the relevancy of the offered testimony may appear at

the time when offered. It was upon this theory, and the failure by the respondent to connect or relate his offered evidence pertaining to subsequent operations with operations within the test period, that the commission excluded the testimony, which exclusions form the basis of exceptions III and IV.

The proceeding before the commission which is now under consideration was instituted to clarify the meaning of the Gallop permit, he having become assignee of the original permit granted to McDonald. Both the original McDonald permit and the Gallop permit limited the permittee to the business of a contract carrier "within the general area and/or for the general purposes within and for which Charles O. McDonald has been regularly engaged in transporting freight and merchandise for hire over the highways of this state from March 1, 1932 to June 30, 1933." The commission was seeking by the clarification proceedings to determine and define what the general area was, and what the general purposes were within and for which McDonald had been regularly engaged in transporting goods during the test period. In determining the admissibility of testimony this is the issue upon which its relevancy depends. The rights of Gallop were limited to the areas and purposes as stated in the permit which was the subject of clarification. It is only as relevant to this issue, and governed by the principles of law we have heretofore announced that evidence of "regular operation" subsequent to the test period was admissible.

All of the exclusions of testimony which are complained of in exceptions III and IV took place before Mr. McDonald had taken the stand and described the nature and extent of his operations within the test period, and at an early stage of the hearing.

In exception III there are two questions which were excluded. The first was addressed to a Mr. Campbell and was as follows:

"Q. Now after the test period, Mr. Campbell, did Houlton Truck Express haul any commodities for Fogg Company from points south of Houlton to Houlton?"

The bill of exceptions does not allege that this testimony was excluded or that exception was noted to its exclusion. A careful search of the entire record which is made a part of the bill of exceptions does show the exclusion, but it fails to show that any exception was noted thereto. The answer of the witness to the next previous question was that he did not recall whether the Houlton Truck Express hauled anything for Fogg & Company in the test period from southerly points to Houlton. Whatever the answer to this question might have been it would have no relation to, nor would it supplement evidence of regular operation as a contract carrier during the test period, within the rule heretofore stated. A sufficient groundwork had not been laid to show the relevancy of the question. On the state of the record at the time of its exclusion the question was inadmissible.

The correctness of a ruling on the admission of evidence is to be determined as of the time of its offer. If at a later stage of the trial the excluded evidence becomes admissible it should be reoffered. See *Melcher* v. *Merriman*, 41 Me. 601. Not only did the defendant fail to reoffer the excluded testimony, but the bill of exceptions and the record failing to show that any exception was noted to its exclusion, the error, if any was waived. Rule XVIII of the Superior Court. R. S., Chap. 40, Sec. 70.

Exception III further sets forth the following:

"Q. Mr. Hovey, in 1933, after you became superintendent of the First National Stores in the Aroostook Area and it was your duty to arrange for the transportation of commodities coming into Aroostook from southerly points in the state did you ever have any conversation with Charles O. McDonald, as owner of Houlton Truck Express, concerning the

hauling of commodities other than those he had been regularly hauling. That can be answered 'yes' or 'no.'

A. Yes.

Q. What was those conversations?"

The latter question was excluded, and an exception which is contained in Exception III, noted.

Neither the bill of exceptions nor the record discloses what the answer would have been. Neither is it shown that any services were rendered in accord with such conversation. Counsel for the respondent stated "I think this witness should be permitted to testify to conversations which he had with McDonald which, will or will not, show what McDonald was holding himself out to do." In the absence of any showing as to what the answer would have been the respondent fails to show that because of the exclusion he suffered substantial prejudice under the rule heretofore stated. Basically, however, the question was inadmissible. The statute makes evidence of "regular operation" subsequent to the test period admissible. "Regular operation" to our minds means actual operation, not a mere offer to operate. It is only actual operation subsequent to the test period, and of the nature heretofore defined, that throws light upon what the actual operations were during the test period. A mere offer to transport, unconnected with any evidence of actual transportation, has no tendency to show the nature or extent of "regular operation" either within or subsequent to the test period. The respondent takes nothing by Exception III.

Exception IV is based upon the exclusion of the following question:

"Mr. Hovey, after you became manager superintendent in 1933, was the Houlton Truck Express engaged to haul any commodities for First National Stores from southerly points in Aroostook County, which commodities were other than those hauled during the test period?

Mr. Barnes: I object.

Mr. Brown: Could I add this to the question—and which commodities were also commodities customarily stocked by the First National Stores in the test period."

This question was excluded, not on the ground that the carrier is necessarily limited to the particular commodities carried in the test period, but on the ground that sufficient evidence had not theretofore been introduced to connect the subsequent operation with that in the test period.

Whether or not sufficient foundation had in fact been laid for the question may be open to doubt. However that may be, the findings of the commission show that its exclusion was not prejudicial. In its decree which allowed the transportation of *groceries,* the commission did not limit the respondent to the specific articles transported during the test period. By express finding the commission held:

"the test period haul of food products was so broad as to constitute transportation of groceries in general. We think it could not fairly be considered anything less than a service to grocers including *any and all commodities customarily dealt in by them.* (Italics ours.) The very item 'groceries' is in our opinion equally inclusive. It is defined in Webster's International Dictionary Second Edition, Unabridged as: 'The commodities sold by grocers, as tea, spices, etc.' We do not think it incumbent upon respondent in all cases to prove the handling of each specific commodity during the test period. If he shows, as we think he has with respect to groceries, a sufficient variety of goods of a particular class to warrant a finding that he was engaged in transporting that class of goods in general, it is sufficient to embrace all items falling, or which may subsequently fall, within the general category."

With this broad treatment of the subject matter of groceries in the decree as including any and all commodities customarily dealt with by grocers, the respondent fails to

show that he was prejudiced by the exclusion of the testimony which is the subject of Exception IV.

The entry must be:

*Exceptions overruled.*