COLE'S EXPRESS, ET AL.
*vs.*
O'DONNELL'S EXPRESS

Kennebec.  Opinion, June 27, 1960.

*Raymond E. Jensen,* for Cole's Express and for
                Fox & Ginn and Bemis Express.

*Frank M. Libby,* for Commission.

*Douglas M. Morrill,* for defendant.

212

SITTING: WILLIAMSON, C. J., WEBBER, TAPLEY, SULLIVAN DUBORD, SIDDALL, JJ.

WEBBER, J.   In 1958 O'Donnell's Express, a corporation engaged in motor truck transportation, filed a tariff schedule with the Public Utilities Commission. The proposed rates covered services to be performed as a contract carrier transporting propane gas in steel cylinders from Portland and South Portland, Maine to Fort Fairfield, Fort Kent, Houlton, Presque Isle and Sherman Mills, Maine and returning the empty steel cylinders to points of origin. O'Donnell held no specific permit to offer the particular service but relied upon the scope of the permit issued to its predecessor, George C. O'Donnell, as a matter of right under the so-called "grandfather clause." This was an unclarified permit authorizing operation as a contract carrier "within the general area and/or for the general purposes" within which Mr. O'Donnell had been regularly engaged in transporting freight and merchandise for hire over the highways of Maine from March 1, 1932 to June 30, 1933, the statutory test period. P. L., 1933, Chap. 259; R. S., Chap. 48, Sec. 23, Subsec. III as amended.

The intervenors, admittedly certified common carriers serving in the same area, requested that the commission investigate and reject the rates on the ground that O'Donnell was without authority to engage in the proposed transportation. The commission first examined the original permit as well as the clarifying testimony of George C. O'Donnell given on August 31, 1933 which is part of the record here. Being still unable to determine the scope of the business which O'Donnell might do as a matter of right under its permit, the commission, having previously suspended operation of the proposed tariff schedule for a period of three months, set the matter for hearing and ordered the respondent O'Donnell to appear and show cause, if any it had,

why it should not cease and desist from performing or attempting to perform the transportation service in question.

After hearing, the commission concluded that the respondent had failed to show that it had ever been authorized to perform this particular transportation service and thereupon ordered the respondent to cease and desist therefrom. Several exceptions raise issues for consideration here.

The respondent contends that the complaint lodged by the intervenors was really addressed to the schedule of rates filed and that the commission should have done no more than to reject the proposed tariff or prescribe minimum rates. It is urged that the commission was without power or authority to go further and upon its own motion order the respondent first to show cause and ultimately to cease and desist. It is apparent from a reading of the provisions of R. S., Chap. 48 that the commission is fully empowered to investigate, even upon its own motion, the unauthorized and unlawful operations or practices of carriers, and after a full hearing, to order that such carriers cease and desist. In this case the rates filed were meaningless if the carrier was without authority to haul the freight and the commission quite properly proceeded to a full and final determination of the basic underlying question.

The respondent complains that it should not have been compelled to assume the burden of proving that it was authorized to perform the transportation in question. When, however, the respondent filed its rate schedule, it asserted inferentially that it was so authorized. When the commission put the matter in issue by its show cause order, the burden of proof devolved upon the respondent by application of the provisions of R. S., Chap. 44, Sec. 71:

"In all trials, actions and proceedings * * * growing out of the exercise of the authority and powers

214

> granted herein to the commission, the burden of proof shall be upon the party adverse to the commission or seeking to set aside any determination, requirement, direction or order of said commission complained of as unreasonable, unjust or unlawful as the case may be."

The respondent insists that while the commission purported to act under the provisions of R. S., Chap. 48, Sec. 23, Subsec. IV as amended, which deals primarily with the filing and approval of reasonable rates and charges, it actually heard and decided the case as though it arose under the provisions of Subsec. III as amended which is concerned essentially with the granting and clarification of permits to contract carriers. The respondent cannot and does not assert that it did not have ample notice of the issues to be determined at the "show cause" hearing. In fact it came to the hearing prepared to try this issue, the scope of its authority under its permit, and offered relevant evidence in an effort to demonstrate to the satisfaction of the commission that it had authority to carry propane gas and empty cylinders between the points shown in its proposed rate schedule. It is apparent from the record that the commission held itself ready at all times to pass upon the rates filed if it could first satisfy itself that the respondent had authority to perform the service covered by the rates. There is nothing mutually exclusive as to the two subsections and when, as here, the extent of authority is inseparably connected with the approval of rates, the commission has not only the power but the duty to determine the preliminary issue before turning to any consideration of the rate schedule.

The commission clarified the original permit issued as of right under the "grandfather clause" only to the extent necessary to resolve the limited issue of authority raised by the filing of the rate schedule. There was no necessity to do more in this proceeding and no more was requested. The respondent has in no way been deprived of the right af-

forded by Subsec. III to request that the commission further and fully clarify its permit. There is no reason to assume that the commission would not grant any such request upon a reasonable showing of necessity therefor and in a resulting hearing the respondent would have opportunity to offer evidence of the full extent of its operations during the test period. The respondent is in no way prejudiced by the limited scope of the clarification engaged in by the commission in this proceeding.

The respondent has excepted to the exclusion of certain exhibits. These were slips purporting to show with the aid of some extrinsic evidence five shipments of propane gas cylinders, some full and some empty, in interstate commerce between November 8, 1933 and December 22, 1933. Subsec. III provides in part that at a hearing for the purpose of clarifying the so-called "grandfather rights" of a contract carrier, "evidence of *regular operation* as a contract carrier from March 1, 1932 to June 30, 1933 may be submitted, and the carrier may supplement same by evidence of *regular operation* subsequent to said period." (Emphasis ours.) It must be noted at once that there was no other evidence offered of any transportation of either propane gas or empty cylinders therefor. This problem was before the court in *Public Utilities Comm.* v. *Gallop,* 143 Me. 290, wherein we said at page 300:

> "In order to throw light upon the true meaning of the original permit, the subsequent operation must be a *regular operation and it should be an operation based upon, connected with, and explanatory of the services performed during the test period.* To meet this test, and to make the evidence of subsequent regular operation admissible, the groundwork therefor should be laid by the introduction of sufficient evidence of operations *during the test period* so that the relevancy of the offered testimony may appear at the time when offered. It was upon this theory, and the failure by the respond-

ent to connect or relate his offered evidence pertaining to subsequent operations with operations within the test period, that the commission excluded the testimony, which exclusions form the basis of exceptions * * * ." (Emphasis supplied.)

So here no foundation had been laid for the admission of evidence bearing on *subsequent* operations since no evidence had then been or was ever offered of either a "regular operation" or in fact any operation at all involving propane gas during the test period. The commission correctly excluded the exhibits.

The commission found:

"The evidence presented in the instant proceeding by respondent is not sufficient to warrant a finding that gases generally and incident thereto empty cylinders were being transported by respondent either during or subsequent to the test period so-called."

Respondent says that this finding was contrary to all of the evidence. The commission accurately summarized the evidence by saying:

"The record before us indicates that respondent transported seven less-than-truck-load shipments of oxygen and acetylene gas in steel cylinders from Portland to Houlton, Maine, and sixteen less-than-truckload shipments of empty cylinders from Houlton to Portland, Maine during the period April 12, 1932 to February 4, 1933 inclusive. There is no showing by respondent that it transported propane gas (LP) in intrastate commerce during the test period so-called; in fact, it appears extremely doubtful that this product was available for transportation in quantity prior to 1936. Nor is there evidence of record that respondent undertook the transportation of this product when it did become available. * * *

"To be entitled to transport gases generally there should be a comprehensive showing that di-

versified types of gases were being hauled with reasonable regularity. * * * It follows then that the mere showing of the transportation of a limited number of shipments consisting of oxygen and acetylene gases during the test period without more does not sustain a finding that respondent possesses the authority to transport the particular item propane (LP) gas.

"Although there is no arbitrary formula by which to determine the number of shipments necessary to establish regular operation, the standard 'regular operation' carries the connotation of substantial as distinguished from incidental, sporadic or infrequent service. See *United States* v. *Carolina F. Carriers Corp.*, 315 U.S. 475, 62 S. Ct. 722, 86 L. Ed. 971 (1942). We are of the opinion that respondent has failed to meet this standard. It would then appear that by performing the transportation here at issue, respondent is instituting a new operation for which it lacks the necessary authority from this Commission."

We are satisfied that the commission thus correctly stated and applied the applicable law.

Moreover, the commission noted that propane "gas" is in reality a liquid in the course of transportation and "is not considered a compressed gas as are oxygen and acetylene gases, neither of which is liquefied." Safety factors and other practical problems of transportation are by no means the same as between the gases and this liquefied petroleum product. Our review of the record satisfies us that the commission's findings of fact were fully supported by substantial evidence and its rulings of law were correct.

*Exceptions overruled.*