**In re O'DONNELL'S EXPRESS.**

**In re Clarification of CONTRACT CAR-RIER PERMIT NO. 222.**

Supreme Judicial Court of Maine.

Jan. 14, 1970.

Raymond E. Jensen, Portland, for plaintiff.

Frank E. Southard, Jr., Augusta, for Fox & Ginn, Inc., and Cole's Express.

Scott W. Scully, Portland, for Maine Central Railroad.

William M. Houston, Bangor, for Bangor & Aroostook Railroad Co.

Horace S. Libby, Augusta, for Maine Public Utilities Commission.

David R. Hastings II, Fryeburg, for amicus curiae.

Before WILLIAMSON, C. J., and WEBBER, MARDEN, DUFRESNE and WEATHERBEE, JJ.

DUFRESNE, Justice.

On November 22, 1933 the Public Utilities Commission (Commission) under Public Laws, 1933, c. 259, Sec. 5, issued to George C. O'Donnell a permit numbered 222 whereby he was authorized to furnish transportation service "as a contract carrier within the general area and/or for the general purposes within which and for which George C. O'Donnell has been regularly engaged in transporting freight and merchandise for hire over the highways of this State from March 1, 1932 to June 30, 1933 * * *." This original permit was properly renewed thereafter according to law and by decree of February 25, 1957 the Commission authorized its transfer from George C. O'Donnell, an individual, to O'Donnell's Express (O'Donnell), the corporate appellant in the instant appeal. O'Donnell continued its carrier business under the general original permit as renewed, which was in full force and effect, when by order dated June 17, 1966 it was directed to appear before the Commission for the purpose of having its permit clarified pursuant to 35 M.R.S.A. § 1555(3). After hearing, the Commission on September 26, 1968 clarified the appellant's Contract Carrier Permit No. 222 by amendment which replaced the general language of the original permit as renewed and substituted for it the authority to engage in transportation service as a contract carrier as follows:

A. Oil barrels for the Texas Company from Houlton to Portland;

B. Plywood for the Northern Plywood Company or its successor from points in Aroostook County to Lewiston and Portland;

C. Used household furniture between points in Aroostook County and between points within said County, on the one hand, and points in Maine, on the other hand;

D. Food products, groceries and commodities generally sold in grocery stores and supermarkets, so-called, from Houlton and Presque Isle, Maine, to said grocery stores and supermarkets at points in Aroostook County with refused or damaged shipments on return;

E. Hardware and commodities generally sold in hardware stores or the hardware section of general or department stores from Houlton and Presque Isle, Maine, to said hard-

ware stores at points in Aroostook County with refused or damaged shipments on return.

The Commission expressly characterized its action as amending the original permit only "insofar as it now pertains to unclarified grandfather rights and exclusive of the specific authority granted by this Commission by its decree of July 30, 1947," which 1947 decree is unquestioned and not involved in these proceedings.

In its points on appeal the appellant claims that the Commission erred as a matter of law in concluding that the intrastate transportation performed by it as a contract carrier during the test period was sporadic or infrequent and not of the regular nature defined by this Court in Cole's Express v. O'Donnell's Express, 1960, 156 Me. 211, 163 A.2d 360. It asserts that it was entitled as a matter of right under the grandfather clause to a permit which included the authority to transport as a contract carrier general commodities from Portland, Augusta and Bangor, to points in Aroostook County and return, and that the denial thereof was error of law. In support of such charge, it accuses the Commission of disregarding the statutory definition of a contract carrier as one regularly engaged during the test period in transportation for hire within the stated statutory evidentiary formula of more than 2 trips in any 30-day or 6-month period, for the more restrictive Commission ruling that the appellant, in addition thereto, must make a comprehensive showing of transportation of the proven diversified commodities with reasonable regularity before the Commission can decree in clarification proceedings that the appellant had authority to engage in their carriage for hire under the grandfather clause of the statute.

Whether findings of fact by the Commission are warranted by law, is a question of law. Biddeford and Saco Gas Co. v. Portland Gas Light Co., 1967, Me., 233 A.2d 730, 736; Public Utilities Commission v. Cole's Express, 1958, 153 Me. 487, 492, 138 A.2d 466. Errors of law are committed if the Commission erroneously interprets and applies by its ultimate ruling the law applicable to the facts found by it. Central Maine Power Company v. Public Utilities Commission, 1957, 153 Me. 228, 230, 136 A.2d 726. And the burden to establish the error of law is upon O'Donnell, the complaining party. Central Maine Power Company v. Public Utilities Commission, supra.

Our problem is one of interpretation of the statutes regulating contract carriers. They date back to 1933 when our Legislature first imposed regulatory supervision and control over motor truck transportation upon the highways of the State. Public Laws, 1933, c. 259. The provisions pertinent to our problem read as follows:

*Sec. 5. "Contract Carrier" defined.*

"The term 'contract carrier' as hereinafter used is intended to include all operators of motor vehicles transporting freight or merchandise for hire other than common carriers over regular routes; except that the term shall not be construed to include any person, firm or corporation who does not engage regularly in the transportation business but who on occasional trips transports the property of others for hire."

*Sec. 5. (Determination of 'who's who' in contract carrier operation)*

"Whether or not any person, firm or corporation is engaging regularly in the transportation business within the meaning of this paragraph shall be a question of fact, to be determined by the commission."

*Sec. 5. (Purposes underlying contract-carrier-business legislation)*

"It is hereby declared that the business of contract carriers, which term is intended to include all operators of motor vehicles transporting freight or merchandise for hire upon the public highways,

other than common carriers over regular routes, is affected with the public interest and that the safety and welfare of the public upon such highways, the preservation and maintenance of such highways and the proper regulation of common carriers using such highways require the regulation of contract carriers to the extent hereinafter provided."

### Sec. 5A. (Permit)

"No contract carrier shall operate any motor vehicle or vehicles for the transportation of property for hire on any public highway within this state without having obtained a permit from the commission."

### Sec. 5C. (Common carrier operations to be protected)

"No application for permit shall be granted by the commission until after a hearing, nor shall any such permit be granted if the commission shall be of the opinion that the proposed operation of any such contract carrier will impair the efficient public service of any authorized common carrier or common carriers then adequately serving the same territory over the same general highway route or routes."

\*    \*    \*    \*    \*    \*

"A permit shall be granted as a matter of right when it appears to the satisfaction of the commission, after hearing, that the applicant has been regularly engaged in the business of a contract carrier as herein defined within this state, from the 1st day of March, 1932; and in such cases, operation may lawfully be continued pending the issuance of such permit, provided application therefor is made within 15 days from the effective date of this act."

### Sec. 5D. (Commission duties)

"The commission is hereby vested with power and authority and it is hereby made its duty to prescribe rules and regulations covering the operation of contract carriers in competition with common carriers over the highways of this state, and the commission shall prescribe minimum rates and charges to be collected by contract carriers which shall not be less than the rates charged by such common carriers for substantially the same or similar service. \*  \*  \*"

### Sec. 12. Penalty.

"Any person, firm or corporation violating any of the provisions of the preceding sections shall be punished by a fine of not less than $10 nor more than $500, or by imprisonment for not more than 11 months, or by both fine and imprisonment."

At the next session of the Legislature, the lawmakers extended the powers of fact finders in relation to the factual determination of regularly engaging in the operation of a contract carrier transportation business to the supreme judicial court, the superior court or to a municipal court and in connection therewith they introduced the legislative clause which is the subject of our consideration in the instant case. The full sentence as amended reads as follows:

### Public Laws, 1935, c. 146, Sec. 5.

"\* \* \* Whether or not any person, firm or corporation is engaging regularly in the transportation business within the meaning of this paragraph shall be a question of fact, to be determined by the commission, the supreme judicial court, the superior court or a municipal court, *but the making of more than 2 trips for hire during any 30-day period shall be deemed as regularly engaging in the transportation business.*" (Emphasis supplied.]

At the same time, the Legislature amended Section 5(C) of the 1933 Public Laws by spelling out an added limitational concept in the issuance of contract carrier permits for further protection of the common car-

rier and significantly by express terms restricted the grandfather permit to the lawful operations of the contract carrier business.

*Sec. 5(C)*

"No application for permit shall be granted by the commission until after a hearing, nor shall any such permit be granted if the commission shall be of the opinion that the proposed operation of any such contract carrier will impair the efficient public service of any authorized common carrier or common carriers then adequately serving the same territory over the same general highway route or routes *or that an increase in the number of contract carriers operating in the area to be served by the applicant will interfere with the use of the highways by the public."*

\*     \*     \*     \*     \*     \*

"A permit shall be granted as a matter of right when it appears to the satisfaction of the commission, after hearing, that the applicant has been regularly *and lawfully* engaged in the business of a contract carrier as herein defined within this state, from the 1st day of March, 1932; and in such cases, operation may lawfully be continued pending the issuance of such permit, provided application therefor is made within 15 days from the effective date of this act." [Emphasis supplied.]

We do not discern in the 1935 amendment any legislative intendment to dilute the fact-finding powers with which the Legislature has invested the Public Utilities Commission in the administration of our motor-vehicle-transportation-for-hire act. The rule, stated on numerous occasions by this Court, that factual findings by the Commission underlying its decree are final if supported by any substantial evidence, was in no way affected by the 1935 legislation. See, Biddeford and Saco Gas Co. v. Portland Gas Light Co., *supra;* Public Utilities Commission v. Johnson Motor Transport, 1951, 147 Me. 138, 143, 84 A.2d 142. It seems obvious to us that the Legislature did not intend to establish an absolute arbitrary standard of "more than 2 trips for hire during any 30-day period" as a bind on the Commission in its issuance of contract carrier permits under the grandfather clause or otherwise without reference to any structural pattern of activity to a reasonable degree of regularity and substantiality in the service rendered or to be licensed. To the contrary, the 1935 amendment polarizes legislative intent towards restricting grandfather operators to lawful operations of the contract carriage business and by providing expressly therein additional protection for common carriers, the Legislature clearly indicated its purpose to provide an easy, speedy and efficient formula whereby the unlawful activities of contract motor carriers could be curbed. Adoption of the arbitrary standard of "more than 2 trips for hire during any 30-day period" in proof of regularly engaging in the transportation business was an adequate device to secure meaningful enforcement of the act against illegal contract carrier transportation by making the application of sanctions and the procurement of injunctive relief readily available. Prior to the amendment, the only practical solution in ridding the highways of unlawful motor vehicle traffic for hire on a regular basis was through the Commission's exercise of its powers of investigation and issuance of a cease and desist order. See, Public Utilities Commission v. Johnson Motor Transport, 1951, 147 Me. 138, 84 A.2d 142. The amendatory legislation made recourse to the Commission unnecessary. Courts were provided with a simple and definite measure of proof whereby criminal complaints could be prosecuted or injunctive relief obtained to stop any unlawful activity in the contract carriage business. Such is the only possible reason for giving municipal courts the power to make findings of fact respecting the question whether a person is engaging regularly in the transportation business, since such an issue would arise

before said court only in the course of prosecution of a criminal complaint charging one with the unlawful operation of a contract carrier business without a permit. It may similarly be said that the Legislature invested the Superior Court and the Supreme Judicial Court with such fact finding powers to permit meaningful relief in either court to enjoin the illegal usurpation of transportation rights by alleged contract carrier business operators, as both courts at the time possessed concurrent original jurisdiction in all equity cases and proceedings. See, Revised Statutes, 1930, c. 91, sec. 35. See also, Eastern Maine General Hospital v. Harrison, 1937, 135 Me. 190 at 193, 193 A. 246.

Such construction is consistent with the express legislative declaration that contract carrier operations are affected with the public interest and that it is necessary for the enhancement of the public welfare to regulate contract carriers as provided under the law, not only for the reason that the safety and welfare of the public upon the highways and the preservation and maintenance of said highways require such regulations but also because the proper regulation of common carriers demand it. Such general purposes have been constant legislative goals from the beginning to this day. See 35 M.R.S.A. § 1555. Any other construction would be contrary to the spirit of the 1935 law which ordered the Commission to grant a permit as a matter of right (the grandfather clause) only when it appeared to the satisfaction of the Commission, after hearing, that the applicant had been *regularly and lawfully* engaged in the business of a contract carrier from the 1st day of March, 1932.

Furthermore, it is undisputed, as appears in Cole's Express v. O'Donnell's Express, 1960, 156 Me. 211, 163 A.2d 360, as it does in the instant case, that the Commission in clarifying rights under the grandfather clause has not been applying the more-than-2-trips-during-any-30-day-period standard in the test year literally but merely has considered the same as one of the evidentiary facts within the totality of circumstances disclosed by the evidence to determine whether the carrier has made a comprehensive showing of transportation of certain types of commodities within certain territorial limits with reasonable regularity as distinguished from the occasional-trip operations excluded under the statute. 35 M.R.S.A. § 1555. The construction placed upon a statute by the governmental agency charged with carrying out the provisions of the law is to be accorded due consideration by the courts in construing the statute. Mottram v. State, 1967, Me., 232 A.2d 809 at 816. In *Cole's Express,* supra, this Court cited the following Commission language which it characterized as a proper statement and application of the applicable law:

"Although there is no arbitrary formula by which to determine the number of shipments necessary to establish regular operation, the standard 'regular operation' carries the connotation of substantial as distinguished from incidental, sporadic or infrequent service. See United States v. Carolina F. Carriers Corp., 315 U.S. 475, 62 S.Ct. 722, 86 L.Ed. 971 (1942)."

Even though such statement was not necessary for the decision and the "more-than-2-trips" standard does not appear to have been raised as an issue in that case, it is inconceivable that this Court would have so clearly approved the concept that regular operation means substantial service and agreed that there was no arbitrary formula by which to determine the number of shipments necessary to establish it in the face of a seemingly contradictory statutory standard, unless this Court then, as we do now, considered the "more-than-2-trips" test not to be a conclusive gauge of regularity of operation when unconnected with substantial service. We do recognize that a ruling "obiter dictum" such as this Court approved in *Cole's Express,* supra, is not entitled to be given authoritative precedential value. Legault, Appellant v. Levesque, Appellee, 1954, 150 Me. 192, 107 A.2d 493;

nevertheless it should receive respectful consideration and we may accept it as persuasive insofar as it accords with our view that the statute in question should not be given the literal meaning contended for by the appellant. See, United States Steel Co. v. County of Allegheny, 1952, 369 Pa. 423, 86 A.2d 838, at 843 [5]; 21 C.J.S. Courts § 190, pages 313, 314.

"An obiter dictum, though not binding under the principle of stare decisis, may be followed if it leads in the right direction." York v. North Central Gas Co., 1951, 69 Wyo. 98, 237 P.2d 845.

"The literal meaning of the language employed in a statute should be followed only when the policy and intent of the Legislature is implemented by such construction." New Jersey Gendron Lumber Co. v. Inhabitants of Town of Hiram, 1956, 151 Me. 450, 455, 120 A.2d 560, 562. The occasion and necessity for the legislative standard of more than 2 trips for hire during any 30-day period as determinative of regularly engaging in the transportation business was not any desire on the part of the lawmakers to protect contract carriers under the grandfather clause but rather was an attempt to provide a useful formula to facilitate prosecutions of, or remedy injunctively the mischief occasioned by, unimpeded proliferation of unlawful transportation operations under the guise of exercising grandfather rights.

The 1941 clarification law was a further step by the Legislature in bringing or keeping contract carrier operators, whether thereafter licensed or theretofore operating as of right under the grandfather clause, within the specific scope of their licensed or established transportation business. There was no intent to enlarge the grandfather rights of contract carriers beyond the range which their transportation business had developed and attained as a reasonably regular undertaking during the test period, whether in the territory served or the type of service rendered. To the contrary, it is our view that the law was amended to bring order and stability to the transportation system by investing the Public Utilities Commission with the power and charging it with the duty to determine upon sufficient proof the specific transportation operations and the scope thereof to which contract carriers were entitled under the grandfather clause of the statute. The precise delineation of the enterprise which seeks the protection of the grandfather clause has been reserved for the Commission. Noble v. United States, 1943, 319 U.S. 88, 63 S.Ct. 950, 87 L.Ed. 1277.

"Contract carriers now operating by virtue of so-called grandfather rights granted by the commission pursuant to this paragraph as originally enacted, and whose present permits, in the opinion of the commission, need clarification, may be directed, upon reasonable notice given as herein above provided, to appear before the commission for further public hearing, at which hearing evidence of regular operation as a contract carrier from March 1, 1932 to June 30, 1933 may be submitted, and the carrier may supplement same by evidence of regular operation subsequent to said period, and the commission shall issue a new permit, in accordance with the facts found on the original and new evidence presented. Said new permit shall specify the territory within which, and the general purposes for which the contract carrier may operate, but said new permit shall not limit or restrict any rights lawfully existing, as shown by the record on the carrier's application filed in 1933, by virtue of this paragraph as originally enacted, and shall not restrict the right of such carrier to substitute or add contracts which are within the scope of his permit or to add to his equipment and facilities within the scope of the permit as the development of the business and the demands of the public have or may require."

Public Laws, 1941, c. 211 (amending P.L., 1933, c. 259, section C(5) as amended), now 35 M.R.S.A. § 1555(3).

In interpreting that statute, our Court said in Public Utilities Commission v. Gallop, 1948, 143 Me. 290, at 300, 62 A.2d 166 at 171:

"The clarification proceeding assumes the existence of rights. It is instituted to make clear what those existing rights are by granting a new definitive permit, which shall neither extend nor abridge that which in reality already exists."

The arbitrary statutory formula, whereby evidence of more than 2 trips for hire during any 30-day period shall be deemed as regularly engaging in the transportation business which we hold was intended solely to facilitate the elimination of operations outside the statute and prosecutions for its violation, was not carried over into the clarification section relating to grandfather rights, for the obvious reason that its use as an absolute standard for determination of regular operations in the test period, without any further consideration of the reasonable regularity of the transportation during that time, as supplemented by regular operation subsequent to said period, would open the door so widely as in effect to permit an extension of the basic enterprise beyond recognition and to sanction a complete frustration of the legislative purpose.

We note that the Legislature in 1949 amended the test formula so-called and substituted for it the making of 2 trips for hire during any 6-month period as evidence which shall be deemed as regularly engaging in the transportation business. Our present statute carries the change. 35 M. R.S.A. § 1555. Even though the Legislature amended the test formula at its first session following our 1948 *Gallop* decision, we discern nothing in the act indicating any legislative intendment contrary to our present interpretation of the law.

■ We observe that the Commission has in the terms of the statute specified the particular territory within which and the general purposes for which the appellant may operate as a contract carrier.

The decree properly reflected the broad sweep of the appellant's service respecting the group of commodities or class of property regularly handled during the test year. The principles enunciated in United States v. Carolina Freight Carriers Corp., 1942, 315 U.S. 475, 62 S.Ct. 722, 86 L.Ed. 971, which we approve, were followed. The Public Utilities Commission has been delegated to measure the territory and service of the appellant and to give it the certificate to cover the carrier's actual and true regular operations in the test year. It is especially fitted with its years of experience in the regulation field to answer that question of fact. This Court has no right to substitute its judgment on the facts for that of the Commission.

The appellant's sole grievance with the ultimate decree is that it is not broad enough. A charge of error as a matter of law is directed at the Commission for its failure to extend the contract carrier permit to include the right to transport all types of commodities not only within Aroostook County but also between points in Aroostook County and Bangor, Augusta and Portland. The Commission's ruling that the evidence tending to support such a broadened decree failed to present a comprehensive showing of reasonable regularity of traffic in types of commodities or beyond the territorial areas other than what the Commission has approved, it is claimed, was an unjustified rejection of the evidence and error of law. It would seem to be an exercise without redeeming value for this Court to minutely detail in this opinion the evidence upon which the appellant relies to support its contention. We have carefully reviewed the record and are satisfied that the Commission's factual findings are unassailable.

The entry will be

Appeal denied.

TAPLEY, J., sat at argument, but retired before the opinion was adopted.