**In re GEORGE W. JEWETT & SON, INC.**
**In re Clarification of Contract Carrier Permit No. 139.**

Supreme Judicial Court of Maine.

Jan. 29, 1970.
As Amended March 6, 1970.

David R. Hastings, II, Fryeburg, for plaintiff.

Frank E. Southard, Jr., Augusta, for Cole's Express.

William M. Houston, Bangor, for Bangor and A. R.R. Co.

Scott W. Scully, Portland, for Maine Cent. R.R. Co.

Horace S. Libby, Augusta, for Public Utilities Commission.

Before WILLIAMSON, C. J., and WEBBER, MARDEN, DUFRESNE, WEATHERBEE and POMEROY, JJ.

DUFRESNE, Justice.

On June 13, 1933 George Jewett made application to the Public Utilities Commission (Commission) for a permit to operate motor vehicles as a contract carrier upon the public highways of the State under Public Laws, 1933, C. 259 Section 5. His application was couched in general terms. In describing the routes traveled he merely stated "between points within this State", his competitors were said to be all rail and truck lines, and the nature of the service rendered was characterized as general. After hearing, he was issued on October 28, 1933 the then customary general permit which authorized transportation "as a contract carrier within the general area and/or for the general purposes within which and for which George W. Jewett has been regularly engaged in transporting freight and merchandise for hire over the highways of this State from March 1, 1932 to June 30, 1933 * * *." Properly renewed thereafter, said original permit was assigned and transferred to the corporate appellant, George W. Jewett & Son, Inc., with Commission approval obtained in 1955. Thus, the appellant (Jewett) was operating its transportation business under a current general permit, when by order dated May 13, 1965 it was directed to appear before the Commission for the purpose of having the same clarified pursuant to 35 M.R.S.A. § 1555(3). The Commission held a hearing thereon in June, 1965, and on January 22, 1969 issued its order clarifying the appellant's Contract Carrier Permit No. 139 by amendment which replaced the general language of the original permit as renewed and substituted for it the authority to engage in transportation service as a contract carrier as follows:

A. Gasoline, kerosene, No. 2 fuel oil, diesel oil, automotive greases and oils, and service station stock, signs, tanks and equipment for the Texas Company from Portland to its bulk plant in Baldwin, and from said bulk plant in Baldwin to its customers within a twenty-five mile radius thereof including Baldwin as a point to be served;

B. Apples from Cornish to Portland;

C. Coal from Portland to Bridgton;

D. Camp baggage from Portland to summer camps within a twenty-five mile radius thereof;

E. Lumber and portable sawmills between points within a forty mile radius of East Baldwin;

F. Machinery or machines for the Portland Tractor Company from Portland to points on and south of Maine Route No. 6.

The Commission denied any right in Jewett to engage in the contract carrier business beyond the scope of the clarified permit and set the effective date of its order ninety days from the issuance thereof.

In its points on appeal the appellant's specific grievances are stated as follows, 1) that the Commission erred as a matter of law in failing to grant it the broader authority to engage as a contract carrier in the transportation of general commodities, expressly excepting however the so-called customary exclusions such as commodities affected with special dangerous characteristics, commodities of unusual value and commodities requiring specialized equipment; 2) that the Commission committed error of law in limiting its territorial area of operation, and 3) that the Commission's order respecting the transportation of petroleum products and service station equipment was legally erroneous in limiting appellant's authority therein to a single named customer and within an unduly restricted territory. In more general terms Jewett asserts that it was entitled under the evidence to a permit of broader and more comprehensive authority than that granted by the Commission order with reference to the classes of customers to be served, the types of commodities to be hauled, and the territory within which to operate.

■ As pointed out by us in our recent decision of O'Donnell's Express, 1970, Me., 260 A.2d 539, our problem is one of interpretation of the statutes regulating contract carriers. Findings of facts by the Commission, if supported by any substantial evidence, are final, Biddeford and Saco Gas Co. v. Portland Gas Light Co., 1967, Me., 233 A.2d 730, 736, but, if the Commission erroneously misinterprets or misapplies the law respecting the evidence before it, its ultimate decision under such circumstances is subject to corrective appellate review. Central Maine Power Company v. Public Utilities Commission, 1957, 153 Me. 228, 230, 136 A.2d 726. The history of our regulatory legislation affecting contract carriers was fully spelled out in O'Donnell's Express, supra, and need not be restated in such detail in this opinion.

We are more particularly involved with that portion of 35 M.R.S.A. § 1555(3) which reads as follows:

"Contract carriers now operating by virtue of so-called grandfather rights granted by the commission pursuant to this subsection as originally enacted, and whose present permits, in the opinion of the commission, need clarification, may be directed, upon reasonable notice given as provided, to appear before the commission for further public hearing, at which hearing evidence of regular operation as a contract carrier from March 1, 1932 to June 30, 1933 may be submitted, and the carrier may supplement same by evidence of regular operation subsequent to said period, and the commission shall issue an amended permit in accordance with the facts found on the original and new evidence presented. Said amended permit shall specify the territory within which and the general purposes for which the contract carrier may operate, *but said amended permit shall not limit or restrict any rights lawfully existing, as shown by the record on the carrier's application filed in 1933, by virtue of this subsection as originally enacted, and shall not restrict the right of such carrier to substitute or add contracts which are within the scope of his permit* or to add to his equipment and facilities within the scope of the permit as the development of the business and the demands of the public have or may require." (Emphasis supplied.)

Mounting a two-prong preliminary thrust toward a favorable review of its appeal, the appellant first argues that we should adopt a liberal construction of the grandfather clause such as espoused in Commonwealth Air Transport, Inc., v. Stuart, 1946,

303 Ky. 69, 196 S.W.2d 866, so that meaningful protection may be given to vested rights of contract carriers, proof of which admittedly may be difficult to produce years following the test period. We are then besieged to infuse more flexibility into our judicial analysis of contract carrier legislation, and particularly to liberalize our attitude respecting the grandfather clause by a unilateral withdrawal from the so-called "hard-line" standards set by this Court in Public Utilities Commission v. Gallop, 1948, 143 Me. 290, 62 A.2d 166, and Cole's Express v. O'Donnell's Express, 1960, 156 Me. 211, 163 A.2d 360. In the recent *O'Donnell's Express,* 1970, we refused to do so when interpreting the grandfather clause in regard to the legislative formula of 2 trips for hire during any 6 months period in the test year. We have no more reason now not to accept this Court's dicta in *Gallop* and in *Cole's Express,* supra, when construing the grandfather clause in the area involved in the instant case.

■ The true meaning of any statutory clause is that which best accords with the subject and general purpose of the statute. Middleton's Case, 1939, 136 Me. 108, 110, 3 A.2d 434. The paramount purpose of the reference legislation was to bring all carriers for hire in the State, whether common or contract carriers, under the exclusive supervision and control of the Public Utilities Commission, and to invest the Commission with the power originally to delineate the legal scope of the motor carrier enterprise and thereafter to contain it within lawful limits. The grandfather clause must be construed in the light of that manifest general policy of the State, and the sole liberal approach permissible under the legislation is that specifically enjoined upon the Commission by the Legislature itself. The new permit issued in clarification proceedings "shall not limit or restrict any rights lawfully existing, as shown by the record on the carrier's application filed in 1933, by virtue of this subsection as originally enacted, and shall

not restrict the right of such carrier to substitute or add contracts which are within the scope of his permit or to add to his equipment and facilities within the scope of the permit as the development of the business and the demands of the public have or may require." 35 M.R.S.A. § 1555 (3).

■ The appellant claims that it was legal error for the Commission to deny it a permit authorizing the transportation of general commodities throughout the territory within which the Commission restricted its carriage rights to specific commodities. It attempts to support its contention from the record made with the Public Utilities Commission in 1933 when George Jewett testified in connection with his original application. The Act demands that the carrier's rights lawfully existing "as shown by the record" on the application filed in 1933 be not limited or restricted. Jewett's application for authority to operate as a contract carrier failed to provide much specificity. He described the area of his operations as "between points within this State," the nature of the service as "general" and the type of commodities as involving snow removal, oil and gasoline hauling, and the use of dump trucks. His testimony was similarly given in general terms, to the effect that he operated out of East Baldwin and Portland all over the State as contracts arrived. To the question, "Q. Hauling anything, anywhere?," he responded: "A. Why, the principal business is gasoline, but we haul—we have dump trucks—platform trucks—and we do contract snow hauling for the towns." Such generalized statements, except for the specific reference to the hauling of oil and gasoline, was not the showing "by record" intended by the statutory provision hereinbefore referred to. In the 1933 proceedings Jewett had the opportunity to get on the record the detailed chart of his transportation operations by giving a clear picture of the growth of his motor carriage business since its establishment in 1921. His failure to do so casts suspicion upon the probable accuracy of the presently

amplified general claims advanced by the appellant-assignee. The reference legislation was enacted to protect, and compel Commission acceptance of, evidentiary facts previously given at hearings held on the original application, against the possibility of the unavailability of such evidence in proceedings for clarification years later. The 1941 clarification law, now 35 M.R.S.A. § 1555 (3), in providing against any limitation or restriction upon any lawfully existing rights "as shown by the record on the carrier's application filed in 1933" presupposes that the record of the 1933 proceedings does establish such lawfully existing rights. In the instant case, the 1933 records fail to prove any entitlement in the assignee-carrier to a transportation permit of general commodities.

The appellant further avers that the testimony of Jewett's employees respecting its carrier business during the test period supports proof of regular transportation of general commodities. We have carefully reviewed the record and this testimony is nothing more than a bare conclusory assertion that Jewett was engaged in the general transportation business, in that he carried general commodities throughout the State of Maine. Other statements were to the effect that Jewett did general trucking, hauling lumber and different things, anything that anybody wanted hauled, anything and everything that he could get or that came along. That Jewett held himself out as willing and able to transport any and all types of commodities in the test period is not disputed on this record. But a review of the evidence concerning commodities other than those for which the Commission granted a transportation permit does not support regular operation in such commodities of that degree of substantiality and consistency of recurrence equating regular engagement in the transportation of the same within the meaning of the law. Mere holding out or offer to carry, unconnected with any probative evidence of an actual carriage of the specific commodities to some reasonable degree of regularity, has no relevant tendency in establishing regular operations in the transportation of such commodities. See, Public Utilities Commission v. Gallop, supra. To base grandfather rights on mere evidence of the carrier's readiness and offer to furnish service for any or all types of commodities would for all practical purposes convert a grandfather contract carrier enterprise into a common carrier business, the very result which our clarification legislation seeks to avoid. In denying the appellant authority to transport general commodities instead of limiting its permit to specific commodities as it did, the Commission committed no error of law.

It is further argued that the limitations placed by the Commission regarding the area to be served is not permissible under the law, since the clarification clause requires that the amended permit shall specify the territory within which the contract carrier may operate. 35 M.R.S.A. § 1555 (3). Appellant contends that it was legal error to delineate the geographical area, within which authority to operate was being circumscribed, in terms of fixed termini or specific routes. Such is not so in light of the record in this case. Under the so-called grandfather clause, the statute sought to perpetuate contract carriers' authority to continue their accustomed business over their accustomed routes through the issuance of a definitive decree and certificate specifying, as the law requires, the territory within which and the general purposes for which the contract carrier had operated in the test period. See, Public Utilities Commission v. Johnson Motor Transport, 1951, 147 Me. 138, 146, 84 A.2d 142, 146. The evidence reveals that the actual accustomed business of the appellant during the test year, in areas where so limited by the Commission, was in fact restricted to designated points. Such being the case, the appellant was not entitled to an enlargement of its service to all points throughout the area. The precise delineation of the area to be serviced has been

entrusted by the Legislature to the Commission. See, United States v. Carolina Freight Carriers Corporation, 1942, 315 U.S. 475, 62 S.Ct. 722, 726, 86 L.Ed. 971.

Finally, did the Commission erroneously restrict the appellant's authority when it specifically conditioned its transportation business in gasoline, oil products and service station stock and equipment upon the existence of a carriage contract with the Texas Company, or the conveyance of machines or machinery solely for the Portland Tractor Company? Section 1555 (3) of Chapter 35, M.R.S.A., expressly provides that the amended permit *shall not restrict the right of such carrier to substitute or add contracts which are within the scope of his permit.* The scope of a carrier's permit must necessarily refer to the previously stated specific territory within which and the general purposes for which the contract carrier may operate, which the law says the amended permit shall describe in detail. Our lawmakers never spoke in terms of limiting grandfather rights to the specific carriage contracts as may have existed in the test period. These contracts may serve to outline the scope of the enterprise as to territorial area to be served or type of service to be rendered. Any other construction would ascribe to the Legislature the dual purpose of containing all established contract carrier businesses within their existing contractual attachments and sealing their possible early demise.

▉ In expressly directing that substitution or addition of contracts stay within the scope of the permit, i. e. the territorial area and type of service authorized, the Legislature necessarily excluded any restrictions which would limit such substituted or added contracts to the original contracting parties. If such had been the legislative intendment, appropriate language to effect such narrow results could easily have been used. In all-embracing terms the law puts beyond Commission restrictive action the contract carrier's

right to substitute or add contracts which are otherwise within the scope of its permit. For us to freeze the carrier to its original customers or shippers during the test period under the guise of construction would so devitalize the carrier's purported absolute immunity in contract substitutions or additions otherwise within permissible limits as to stamp the legislative grant as a mere exercise in illusory practice. We do not look with favor upon an interpretation which in practical effect would invalidate the grandfather clause itself, especially when the proffered construction harmonizes with the broad policy of the motor transportation law and saves harmless a large segment of the motor carrier industry which the Legislature has endowed with grandfather rights.

We note that in the licensing of a new contract carrier, the Commission is empowered, when consistent with public interest and in accordance with the policy declarations of the regulatory legislation, to attach as terms and conditions of the permit that the carrier may substitute or add contracts which are within the scope of the permit and specify the period during which the permit itself will remain in effect. 35 M.R.S.A. § 1555 (3). No such absolute power of life and death was given to the Commission over contract carriers entitled to grandfather rights and it was within legislative intendment that a contract carrier business existing during the test period be permitted future growth within the scope of its lawful operations through substitutions or additions of other carriage contracts.

It is true, as stated in Noble v. United States, 1943, 63 S.Ct. 950, 319 U.S. 88, 87 L.Ed. 1277, that the Commission, in order to fulfill its duties of clarification respecting the permit of a particular contract carrier and to arrive at a definitive decree which will describe accurately the lawful scope of the carrier's business, must take into consideration not only the territory served and the commodities hauled, but also the type of shippers served. Disre-

garding that aspect in testing the carrier's rights under the grandfather clause would serve either to enlarge or contract the actual scope of the carrier's business in the test period. However, the purposes of the law will be fully served if the Commission's power respecting the same be limited to classes or types of shippers rather than individual shippers.

The appellant has made a proper showing under the law that it is entitled to a permit authorizing it to operate in the areas stated in the Commission order and to the extent particularized therein, but without specific limitation to the Texas Company and the Portland Tractor Company; where it limits for the future the appellant's transportation rights under the grandfather clause in the transportation of gasoline, oil and service station stock, etc., to a contract with the Texas Company and the conveyance of machinery and machines to dealings with the Portland Tractor Company, the order should be broadened to include like transportation rights as evidenced by the instant record and exercised by shippers of the general type or class as the Texas Company and the Portland Tractor Company respectively represent in their field.

The Commission's decree should stand in full, except as to Paragraphs 1–A and 1–F thereof, and as to those two paragraphs the law will support the Commission's decree provided there is substituted for or added to the individual shipper's name the class of shippers which the Texas Company and the Portland Tractor Company typify under the evidence; and further provided, that in said paragraph 1–A the point of origin is enlarged from "Portland" as therein set forth, to "Portland or South Portland".

The entry will be

Appeal sustained. Case remanded to the Maine Public Utilities Commission for a decree upon the existing record, in accordance with this opinion.