N. J. GENDRON LUMBER CO., APPELLANT
*vs.*
INHABITANTS OF THE TOWN OF HIRAM, AND
CHARLES J. SMALL, HARRY L. PENDEXTER, AND
FRANK W. MERRIFIELD, ASSESSORS FOR THE TIME BEING
OF SAID TOWN OF HIRAM, APPELLEES

Oxford.    Opinion, February 6, 1956.

*Gendron, Fenderson & McDougal,* for plaintiff.

*Sidney Batchelder,*
*Albert J. Stearns,* for defendant.

SITTING: FELLOWS, C. J., WILLIAMSON, BELIVEAU, TAPLEY, CLARKE, WEBBER, JJ.

WEBBER, J. The appellant sought an abatement of a portion of the tax assessed on its personal property as of April 1, 1950. The petition having been denied by the assessors, appeal was seasonably taken to the Superior Court. The action of the assessors was there affirmed. Appellant's exceptions now bring the matter before us. The factual background is fully covered by an agreed statement of facts and stipulations.

The appellant is a corporation engaged in the manufacture and sale of lumber, both at wholesale and retail, and is located and conducts its principal business activities in Sanford. During the year ending April 1, 1950, appellant was buying square edged lumber from a third party who was operating a portable sawmill in Hiram. As the lumber came to appellant from the mill, it was stuck in an adjoining field for drying and storage. The quantity of manufactured lumber purchased and stuck varied from month to month. Moreover, there were continuous but fluctuating withdrawals of lumber from storage to be hauled to appellant's mill in Sanford, there to be double-end trimmed and planed and ultimately sold to consumers out of appellant's Sanford yard. The average quantity of lumber on hand in Hiram during the tax year was 157,662 board feet, whereas the amount on hand April 1, 1950 was 371,759. The basic issue here to be resolved is whether the tax should have been based upon the value of the average quantity maintained throughout the year or upon the value of the quantity on hand April 1, 1950.

This issue can only be resolved by an interpretation of the language of R. S., 1944, Chap. 81, Sec. 12 (now R. S., 1954, Chap. 92, Sec. 13), and especially the last clause thereof which states: "provided, however, that personal property

employed in trade shall be taxed on the average amount kept on hand for sale during the preceding year or any portion of that period when the business has not been carried on for a year." We cannot discover that this portion of the statute dealing with valuation on an "average amount" has ever before been construed by this court. This clause was first enacted by P. L., 1919, Chap. 82 as an amendment and an addition to R. S., 1916, Chap. 10, Sec. 13 which read as follows: "All personal property within or without the state, except in cases enumerated in the following section, shall be assessed to ·the owner in the town where he is an inhabitant on the first day of each April."

This provision has always been interpreted and understood as establishing two rules, one of method and one of situs. As to method, it has always been interpreted to mean that the tax is laid upon the fair value of personal property on hand April 1st. As to situs, it provided explicitly for taxation by the town in which the taxpayer was an inhabitant on April 1st, "except in cases enumerated in the following section." These stated exceptions all dealt with situations in which the *situs* of taxation was varied, but it is important to note that these exceptions in no way varied the *method.* Personal property, whether taxable under the general rule in the town of residence or in some other town under a stated exception, was all and without exception taxable on the basis of the fair value of the quantity on hand April 1st. Thus matters stood until the amendment of 1919. Here for the first time the Legislature provided an exception to the general rule of method. If personal property was employed in trade, it would be taxed on the basis of the average amount kept on hand for sale during the year. The rule of method has never since been varied by further amendment.

The personal property here was manufactured lumber. It was not "in the possession of a transportation company

and in transit." It was therefore taxable in the town where it was situated on April 1, 1950. R. S., 1944, Chap. 81, Sec. 13 as amended; *Dead River Co.* v. *Assessors of Houlton*, 149 Me. 349. This is true even though it was intended that the lumber should be trimmed and planed in another town. *Desjardins* v. *Lumber Company*, 124 Me. 113. The parties agree that the lumber was taxable in Hiram, but the appellees contend that, the lumber being taxable under one of the stated exceptions, it could not be valued under the "average amount" formula, because, they say, "by exempting manufactured lumber from operation of Sec. 12 and placing it in Sec. 13 not only fixes its situs but removes it from the average value clause." In short, the appellees argue that the "average amount" formula is applied only when personal property is employed in trade in the town where the taxpayer is an inhabitant. In the light of the historical development of the statute and for the reasons already stated, we cannot agree with this contention.

It is true that this manufactured lumber was not employed in trade in Hiram, the town where it was taxable. The following appears in the agreed statement: "This lumber which was stuck and stored in Hiram, in the manner above described, was, at all times herein pertinent, held and kept by Appellant for sale, and was, from the moment of its acquisition by Appellant, subject to sale, with or without further processing, at wholesale or retail, in the regular, normal and usual course of Appellant's business. Appellant could and would have sold the lumber in the form in which it came out of the portable sawmill in Hiram, and even F.O.B., the sticking field in Hiram, had the then current demands of the market made that the most profitable way for Appellant to dispose of it. Actually, however, it was expected from the start that the lumber would, in due course, be taken to Appellant's mill in Sanford for further processing, that is, to be double-end trimmed and planed; and this was done, as a matter of fact. As so further pro-

cessed, it was disposed of in the regular channels of trade, the great bulk going directly from Appellant's Sanford yard to consumers, e.g., contractors and builders, etc., some being sold at wholesale and shipped by truck or via rail to retailers in other states. Throughout this period, Appellant had a similar, but larger and more diversified stock of lumber at its Sanford yard, similarly destined for commerce." The phrase "employed in trade" as used in our taxing statutes has a well defined meaning. Personal property is not "employed in trade" merely because it would have been sold under certain conditions which never occurred and which were not even anticipated. It has been said that all property is for sale at a price, an exaggeration which nevertheless has some validity in the realm of commerce. No doubt this lumber would have been sold in Hiram if the offered price were high enough. But the fact remains that it was not sold there, nor were efforts made to sell it there. It was intended and destined for further process and sale in Sanford as a part of the principal business of the taxpayer, and that is exactly where it went. In short, it was employed in trade, not in Hiram but in Sanford. *Sears Roebuck & Co.* v. *Portland et al.*, 144 Me. 250; *New Limerick* v. *Watson*, 98 Me. 379; *Gower* v. *Jonesboro*, 83 Me. 142; see *Leeds* v. *Gravel Co.*, 127 Me. 51.

We do not consider, however, that the "average amount" formula is inapplicable merely because the lumber is not employed in trade in the town where it is taxable. The Legislature in enacting the formula has not so limited it and to construe the statute so narrowly would, we think, defeat the purpose which was intended. What was that purpose? As a practical matter, assessors cannot and do not ordinarily take inventory on each April 1st, nor does the taxpayer for that matter. The property is in trade and as purchases are made and sales occur, the inventory fluctuates. If the average is to be used, the taxpayer feels no necessity to reduce

inventory before April 1st. Conversely, he feels free to increase inventory before the effective tax date if market conditions indicate the advisability of such action. The result, based upon an average, more realistically and less artificially reflects his holdings of personal property as a basis of measuring his public obligation. The literal meaning of the language employed in a statute should be followed only when the policy and intent of the Legislature is implemented by such construction. *Georgetown* v. *Hanscome*, 108 Me. 131. No limitation being imposed, the words "employed in trade" may properly be construed as meaning "employed in trade anywhere." We think this is a case where the letter of the statute best expresses legislative purpose.

In further support of this conclusion, some consideration of the case of *Sears Roebuck & Co.* v. *Portland et al., supra,* is helpful. In that case the taxpayer conducted its main business and made its sales in Portland. In South Portland it maintained in a warehouse a large stock of merchandise which was available either to fill orders or to replenish the stock of the Portland store. Although the case turned on the procedural aspects of declaratory judgment, the court said that the merchandise in South Portland was employed in trade in Portland and there taxable. We do not think anyone would seriously contend that it was not taxable in accordance with the "average amount" formula. The opinion was dated August 4, 1949. On August 6, 1949 there became effective an amendment (P. L., 1949, Chap. 431) which made this same merchandise thereafter taxable in South Portland, where it was situated on April 1st. It was still the same fluctuating inventory of merchandise and still employed in trade in Portland, which by the effect of the new amendment was no longer the taxing city. It is inconceivable that the Legislature intended that by merely changing the situs of taxation of this merchandise, it would also change the method of taxation. Clearly, the situs

changed, but the merchandise, being employed in trade, continued to be taxable under the "average amount" formula. So also the lumber in the case before us, although taxable as "manufactured lumber" in Hiram, was taxable by Hiram under the "average amount" formula because "employed in trade" in Sanford.

Appellant's exceptions must be sustained. The parties have by stipulation agreed that our action in disposition of the bill of exceptions is to effectively terminate the litigation between them, and they have agreed upon alternative judgments and awards of costs which may be entered upon remand to the Superior Court. In event the appellant should prevail, it is stipulated that judgment should be entered below for the appellee Inhabitants of the Town of Hiram in the amount of $302.71 and costs should be awarded to appellant in the agreed amount of $35.

The entry will be

*Exceptions sustained.*

*Case remanded to the Superior Court for entry of judgment and costs in accordance with the stipulation of the parties.*