EMPLE KNITTING MILLS, APLT.

*vs.*

CITY OF BANGOR, ALLEC M. WESCOTT, HAZEN C. EMERY
AND JAY E. ALLEY, ASSESSORS, APPELLEES

Penobscot.   Opinion, June 26, 1959.

*Gerald E. Rudman,* for plaintiff.

*Abraham J. Stern,* for defendant.

SITTING: WILLIAMSON, C. J., WEBBER, TAPLEY, SULLIVAN, DUBORD, SIDDALL, JJ.

SIDDALL, J.   On report.   This case originated in the Superior Court for Penobscot County and comes here on an agreed statement of facts and stipulations.   The record shows that the appellant, a Maine corporation having its

place of business at Bangor, was in 1957 and prior thereto engaged in the business of manufacturing knit wear. The appellees are the City of Bangor, and its duly appointed and qualified Assessors for the year 1957. For the year prior to April 1, 1957, the appellant had on hand in the City of Bangor a constantly fluctuating quantity of raw materials consisting of yarns, findings, buttons, etc., and partially finished and finished knit goods. Appellant duly submitted a list of all of its taxable property in the City of Bangor, averaged for the year next prior to April 1, 1957. The Assessors assessed a tax on the appellant's personal property set forth above based on the value of the property on hand on April 1, 1957.

Appellant duly filed a written application for abatement of so much of its 1957 tax as exceeded the amount which would have been due had the valuation been based on average inventory. The application for abatement was denied, and an appeal was taken to the Superior Court.

It was stipulated by the parties that all procedural requirements have been duly and seasonably complied with or waived. It was further stipulated that the only issue upon this appeal is whether or not appellant's inventory hereinbefore described was taxable on the basis of the amount on hand on April 1, 1957, or on the average amount kept on hand during the preceding year.

(1) If the former, judgment is to be entered for the City of Bangor for Eight Thousand Three Hundred Twenty-two Dollars and Eighteen Cents ($8,322.18), without interest but with costs of court, in the agreed amount of Fifty Dollars ($50).

(2) If the latter, judgment to be entered for the City of Bangor in the amount of Six Thousand Five Hundred Seventy-three Dollars and Thirty-five Cents ($6,573.35),

without interest but with costs of court, in the agreed amount of Fifty Dollars ($50).

The pertinent provision of the statute applicable to this case is contained in Sec. 3, R. S., Chap. 91 A, which reads as follows:

> "Real estate and personal property taxable; personal property employed in trade; taxable year.— All real estate within the state, all personal property of residents of the state, and all personal property within the state of persons not residents of the state is subject to taxation on the 1st day of each April as hereinafter provided; and the status of all taxpayers and of such taxable property shall be fixed as of that date; *provided, however, that personal property employed in trade shall be taxed on the average amount kept on hand for sale during the preceding taxable year, or any portion of that period when the business has not been carried on for a year. The taxable year shall be from April 1 to April 1.* (1955, c. 399, Sec. 1.)" (Emphasis ours)

Under the stipulation the parties are in agreement that the personal property in question was taxable in the City of Bangor, and we are therefore not concerned with the question of the situs of the property for the purpose of taxation. Our problem is to determine the correct method of valuation.

Prior to 1919 all personal property was assessed to the owner in the town where he was an inhabitant on the first day of April. However, in 1919 the legislature amended the law relating to the taxation of personal property by providing that personal property employed in trade should be taxed on the average amount kept on hand for sale during the preceding year. This amendment is now a part of R. S., Chap. 91 A., Sec. 3. The appellant claims that its personal property was of such a nature that it should have been taxed

under the "average amount" formula set forth in said Sec. 3.

Was the personal property which was the subject of taxation in this case *employed in trade* within the meaning of the statute? It undoubtedly was. In *Gower* v. *Jonesboro,* 83 Me. 142, 145, 21 A. 846, in defining this term as used in what is now R. S., Chap. 91 A, Sec. 9, Par. I, relating to taxation of personal property, our court said:

> "The appropriate meaning of 'trade,' as used in the statute, as defined by Bouvier, embraces 'any sort of dealings by way of sale or exchange; commerce; traffic.' Webster, Trade."

See also *Farmingdale* v. *Berlin Mills Co.,* 93 Me. 336, 338, 339, 45 A. 39. This term is applicable to a manufacturer of articles of trade as well as to a wholesale or retail dealer in such articles.

The appellant was engaged in the business of manufacturing merchandise for sale. The finished product, the unfinished product and all materials which were kept on hand for the purpose of ultimate incorporation into the finished merchandise were *employed in trade* within the meaning of the statute.

The statute further provides that such property employed in trade shall be taxed on the average amount *kept on hand for sale* during the preceding taxable year. Was any or all of the personal property taxed to the appellant *kept on hand for sale* within the meaning of the statute?

The fundamental rule in the construction of a statute is the legislative intent. It is the intent as expressed in the statute but interpreted with reference to the apparent purpose and subject matter of the legislation. See *State* v. *Gaudin,* 152 Me. 13, 16, 120 A. (2nd) 823; *Hunter* v. *Totman,* 146 Me. 259, 265, 80 A. (2nd) 401; *Craughwell* v. *Trust Company,* 113 Me. 531, 95 A. 221.

"The literal meaning of the language employed in a statute should be followed only when the policy and intent of the Legislature is implemented by such construction. *Georgetown* v. *Hanscome,* 108 Me. 131." *N. J. Gendron Lumber Co.* v. *Inhabitants of Hiram,* 151 Me. 450, 455.

It is the duty of the court to interpret the language of a statute so as to carry out the obvious purpose which the legislature had in mind. *Steele* v. *Smalley,* 141 Me. 355, 357, 44 A. (2nd) 213.

A construction should be avoided which leads to a result clearly not within the contemplation of the legislature or which leads to a result which is absurd, even though the strict letter of the law may have to be disregarded. *Ashland* v. *Wright,* 139 Me. 283, 29 A. (2nd) 747.

In *N. J. Gendron Lumber Co.* v. *Inhabitants of Hiram,* 151 Me., *supra,* the court in discussing the purpose of the "average amount" formula made the following statement:

> "We do not consider, however, that the 'average amount' formula is inapplicable merely because the lumber is not employed in trade in the town where it is taxable. The Legislature in enacting the formula has not so limited it and to construe the statute so narrowly would, we think, defeat the purpose which was intended. What was that purpose? As a practical matter, assessors cannot and do not ordinarily take inventory on each April 1st, nor does the taxpayer for that matter. The property is in trade and as purchases are made and sales occur, the inventory fluctuates. If the average is to be used, the taxpayer feels no necessity to reduce inventory before April 1st. Conversely, he feels free to increase inventory before the effective tax date if market conditions indicate the advisability of such action. The result, based upon an average, more realistically and less artificially reflects his holdings of personal property as a basis of measuring his public obligation."

The finished merchandise was clearly personal property kept on hand for sale within the meaning of the statute, and should have been valued under the "average amount" formula. A question arises as to the taxable status of the remaining personal property. Strictly speaking, such property was not kept for sale in the usual course of the business of the appellant. However, it was kept for eventual incorporation into the merchandise to be sold. Applying the principles of construction set forth above, it seems to us that the purpose of the legislation establishing the "average amount" formula, as set forth in *Gendron Lumber Co.* v. *Inhabitants of Hiram, supra,* was to establish a reasonable and sensible formula equally applicable to the finished product and to the materials which make up the finished product. We do not believe the legislature intended that a tax on the goods ready for sale should be assessed on the "average amount" formula, and that a tax on the remaining personal property inventory should be based upon the value of such property on hand April 1st. An interpretation which would allow such a method of taxation would lead to an absurd result not within the contemplation of the legislature.

All of the personal property of the appellant should have been assessed on a valuation based on the average amount kept on hand during the taxable year from April 1, 1956, to April 1, 1957.

In accordance with the stipulation of the parties, the entry will be

> *Judgment for the City of Bangor in the amount of Six thousand five hundred seventy - three dollars, thirty-five cents without interest and with costs of court assessed at fifty dollars.*