**Allan G. BALLARD**

v.

**Joseph T. EDGAR (Secretary of State).**

Supreme Judicial Court of Maine.

Sept. 1, 1970.

Berman, Berman & Flaherty, by Harold C. Pachios, Portland, for plaintiff.

Leon V. Walker, Jr., Asst. Atty. Gen., Augusta, for defendant.

Before WILLIAMSON, C. J., and WEBBER, MARDEN, DUFRESNE, WEATHERBEE and POMEROY, JJ.

WEBBER, Justice.

This was an appeal from a determination by the Secretary of State that appellant's license and privilege to operate a motor vehicle is suspended for one year. Appellant was convicted of a violation of 29 M.R.S.A., Sec. 1312 as enacted by P.L.1969, ch. 439, Sec. 1 (operation while impaired). Appellant had a prior conviction on October 9, 1958 for operating a motor vehicle while under the influence of intoxicating liquor in violation of the then statute, R.S. 1954, Ch. 22, Sec. 150 as amended. The issue reported to the Law Court for final decision is whether or not under the wording of Subsec. 11 of Sec. 1312 of the present law, this prior conviction should be counted to enlarge the period of license suspension.

The pertinent provisions of Subsec. 11 are as follows:

"11. *Penalties.*

A. Whoever shall operate or attempt to operate a motor vehicle within this State while his mental or physical faculties are impaired by the use of intoxicating liquor or drugs, upon conviction, shall be punished by a fine of not more than $300 or by imprisonment for not more than 90 days, or by both.

The license and privilege to operate motor vehicles of any person convicted of violating paragraph A of this subsection for the first time shall be suspended for 3 months immediately by the Secretary of State * * *.

\* \* \* \* \* \*

Any person *convicted of a 2nd violation of paragraph A of this subsection* shall have his license and privilege to operate a motor vehicle in this State suspended in the manner provided for a period of one year, provided that after the expiration of 6 months from the date of such suspension, he may petition the Secretary of State for a license or permit * * *." (Emphasis ours)

Paragraph B immediately following provides a penalty for operation or attempted operation "while intoxicated." It further provides for license suspension "upon first conviction of violating paragraph B of this subsection" for a period of one year, and "upon a 2nd conviction of a violation of paragraph B" for two years.

It should be noted that there is no provision for overlap with respect to prior convictions under the respective paragraphs. For example, there is no provision for enlarging the period of suspension of the license of one convicted of a violation of paragraph B upon a showing that he had previously been convicted of a violation of paragraph A.

The appellant asserts that the wording of paragraph A is clear and unambiguous and leaves no room for judicial interpretation in variance of the precise language. He points to the fact that appellant's prior conviction was not for a "violation of paragraph A of this subsection" and therefore may not be so counted as to enlarge the suspension period from 3 months (first conviction) to one year (second conviction).

The State vigorously contends that the letter of the statute is at odds with true legislative intent and that intent can and should be ascertained and given controlling effect. The State argues that by the words "violation of paragraph A," the Legislature intended to include any prior conviction for operation while impaired under this or any prior statute making the conduct described unlawful. In State v. Bryce (1968) Me., 243 A.2d 726 we held that "the offense of 'operation while impaired' is indistinguishable from and synonymous with 'operation while at all under the influence' as judicially defined." On the State's theory, therefore, a prior conviction under a statute making the latter conduct unlawful, as was the case here, should be counted in applying the second conviction rule in paragraph A.

In a number of cases our Court has declined to adhere to the letter of a statute when it was apparent that the intent and purpose of the statute was otherwise. Steele v. Smalley (1945) 141 Me. 355, 44 A.2d 213; State v. Day (1933) 132 Me. 38, 165 A. 163; State v. Larrabee (1960) 156 Me. 115, 161 A.2d 855; Emple Knitting Mills v. City of Bangor (1959) 155 Me. 270, 274, 153 A.2d 118. In these cases, however, the Court was satisfied that to apply the strict letter of the law would produce absurd consequences which the Legislature could not possibly have intended. The guiding principle was stated in Emple Knitting Mills v. Bangor (supra) in these terms:

"A construction should be avoided which leads to a result clearly not within the contemplation of the legislature or which leads to a result which is absurd, even though the strict letter of the law may have to be disregarded. Inhabitants of Town of Ashland v. Wright, 139 Me. 283, 29 A.2d 747."

When "words are free from doubt," they are the "final expression of the legislative intent." They are not free from doubt when they lead to "absurd or wholly impracticable consequences." State of Maine v. United States (1943) 1 Cir., 134 F.2d 574. Often the history of the legislation may throw light on its spirit, purpose and intent.

The problem of operation of motor vehicles by drivers influenced by the use of intoxicating liquor first received legislative attention in 1921. There was then enacted as part of the new Motor Vehicle Law, Sec. 74 of P.L.1921, Ch. 211, which made operation and attempted operation unlawful when the driver was intoxicated or at all under the influence of intoxicating liquor, no limitation being placed on the locus of the act. The license was "immediately revoked" upon conviction, no distinction being made between the first offense and a "second or subsequent offense."

P.L.1925, Ch. 211 placed limitations on the locus of the offense, not material here, and added a felony sanction where the offense was "high and aggravated." No change was made, however, with respect to license suspension in the portion dealing with misdemeanors.

More drastic changes occurred upon enactment of P.L.1929, Ch. 327, Sec. 2. This statute struck out the whole prior law, renumbered the section and inserted in place of the prior law new provisions. It defined the locus as "upon any way, or in any other place," but otherwise retained the old definitions of unlawful conduct, both as to misdemeanor and felony. It placed the limit of license suspension after first conviction at three years. That limit "upon a second conviction of a violation of the provisions of this section" became five years. "Upon any subsequent conviction for a similar offense," the suspension became absolute. There was then added this significant clause:

"for the purpose of this section, in case a person has been convicted one or more times prior to the date this act takes effect, of a violation of the provisions of this section, such previous conviction or convictions shall be construed as one conviction."

■ A: this point certain things should be carefully noted. Whether or to what extent the suspension of licenses is imposed as a safeguard for the public is entirely a matter of legislative policy. The Legislature has not hesitated to change that policy from time to time. In 1929 it moved from revocation under all circumstances to revocation for limited periods depending upon the number of prior convictions. In the last quoted clause it placed a limit on the number of convictions occurring prior to July 13, 1929, the effective date of the Act, to be counted in fixing the duration of suspension. In that same clause it made it abundantly clear that it intended that convictions of the several offenses described in the section, even though obtained under prior repealed sections, should be taken into account in determining the limits of license suspension. It should also be noted that in the 1929 law the Legislature treated the phrase "conviction of a violation of this section" (second conviction) and "conviction for a similar offense" (any subsequent conviction) as synonymous for its purposes in dealing with license suspension. The language with which we are primarily concerned remained unchanged through the revisions of 1930, 1944 and 1954.

P.L.1959, Ch. 144 repealed the last above quoted clause and substituted in place thereof the following:

"For the purpose of this section, in case a person has been convicted one or more times of a violation of the provisions of this section, only those prior convictions had within the 10 years immediately preceding a conviction shall be considered."

This provision was repealed by P.L.1963, Ch. 261. We attach some significance to this short lived amendment because it further demonstrates that historically the Legislature has not had any fixed, unyielding policy as to how it would treat prior convictions in determining the limits of license suspension. Between 1921 and 1964, four different policies can be identified, all of which have been implemented for varying periods of time.

The 1964 revision contained in 29 M.R. S.A., Sec. 1312 all the statutory language above discussed, still in one single section and with no significant changes.

P.L.1967, Ch. 546 enacted a new and separate Sec. 1312–A additional to 29 M.R. S.A. We are here concerned with the license revocation provision contained therein. The last paragraph of the new section stated:

"The license or right to operate motor vehicles of any person convicted of violating this section shall be suspended for 3 months immediately by the Secretary of State * * *. Upon a 2nd or subsequent conviction of a violation of this section, the person's license or right to operate a motor vehicle shall be suspended in the manner provided for one year."

We do not think it could be argued convincingly that the Legislature intended by this use of language that any prior convictions of other offenses described in other sections of the law were to be counted in determining whether or not a person had "a 2nd or subsequent conviction of a violation *of this section.*" (Emphasis ours). Assuming as we must that the Legislature was attempting, albeit unsuccessfully, to define a new offense with new penalties and new license revocation provisions, it is obvious that it was intended that this new section should stand alone and without regard to 29 M.R.S.A., Sec. 1312 or any convictions obtained thereunder. Here was an expression of a new policy with respect to a new law.

No doubt prompted in part by our decision in *Bryce,* the Legislature moved promptly to repeal Sec. 1312–A and the old Sec. 1312 and enact a new Sec. 1312 which completely restated and redefined the law relating to the operation of motor vehicles by drivers influenced in varying degrees by the use of intoxicating liquor or drugs. P.L.1969, Ch. 439.

The new law introduced the concept of implied consent to the taking of certain tests to determine whether or to what extent an operator was affected by the use of intoxicating liquor. It carefully separated operation while impaired and the penalties therefor from operation while intoxicated and its resulting penalties. It eliminated the felony provisions entirely. It spelled out in paragraph A of Subsec. 11 the terms of license suspension in relation to operation while impaired. Different terms of suspension were provided in paragraph B dealing with operation while intoxicated. In neither case are the terms the same as had been provided in the old Sec. 1312, now repealed. There is every indication that the Legislature had a new concept of needed legislation in this area and under a new policy intended to make a fresh start. This could well include a new posture with respect to the use of prior convictions obtained under the old law.

Individual opinions could differ widely as to the wisdom of basing future license suspensions exclusively upon convictions obtained under the new law. But that is a policy decision exclusively within legislative competence. We recognize the possibility that, as the State suggests, the language used is the result of mere legislative inadvertence. If that be so, the Legislature will have opportunity to amend and state clearly some different policy with respect to the use of prior convictions. We cannot conclude that strict adherence to the letter of the statute produces absurd or impracticable consequences. There is after all only a difference in degree between counting no convictions obtained prior to 1969 on the one hand and counting only one conviction obtained prior to 1929 or counting no convictions more than ten years old on the other. The Legislature may have concluded that in imposing a license suspension for refusal to submit to a test, it had sufficiently strengthened the law and was justified in permitting operators to start anew under a new law, unburdened by the effect of prior convictions obtained under the old law.

Moreover, if we were to adopt the State's suggestion and under the guise of interpretation substitute our own language for that used by the Legislature, we would at once

find ourselves inescapably involved in formulating legislative policy. Such questions as these would at once arise. Should all convictions obtained under paragraph B be counted in determining the limit of a license suspension after a conviction obtained under paragraph A? And vice versa? Should all convictions obtained at any time under the old law, whether for operation while intoxicated or for operation while under the influence or for attempts to commit either offense, he counted when the current conviction is under either paragraph A or paragraph B? Numerous choices are presented for legislative determination, choices which the Court cannot make without engaging in judicial legislation.

We conclude that under these circumstances the clear and unambiguous wording of the new law must control. The appellant's prior conviction was not obtained under paragraph A and therefore does not have the effect of increasing the limit of his license suspension.

*Appeal sustained.*

*License suspension period reduced to three months.*