**STATE DEVELOPMENT OFFICE ***

v.

**STATE EMPLOYEES APPEALS BOARD
and Paul F. Brogan.**

Supreme Judicial Court of Maine.

Sept. 16, 1976.

* The original 80B complaint was brought in the name of the Department of Commerce and Industry. But that department was abolished by emergency legislation effective June 13, 1975 (P.L.1975, c. 481) and replaced by the State Development Office. Consistent with the spirit of Rule 25(d), M.R.C.P., this new department known as State Development Office is made the present plaintiff by automatic substitution, and all references in the opinion to the Department (Department of Commerce and Industry) shall imply the State Development Office.

Leon V. Walker, Jr., Asst. Atty. Gen., Augusta, for plaintiff.

Locke, Campbell & Chapman by Harry N. Starbranch, Augusta, for Paul F. Brogan.

Sidney H. Geller, Waterville, for State Employees Appeals Board.

Before DUFRESNE, C. J., and WEATHERBEE,* POMEROY, WERNICK, ARCHIBALD, DELAHANTY, JJ.

DUFRESNE, Chief Justice.

Paul F. Brogan, the appellee, was notified that, as of August 31, 1973, his employment by the Department of Commerce and Industry (the Department) would be terminated. On September 6, 1973 Brogan initiated a grievance procedure pursuant to 5 M.R.S.A., § 753 and it is conceded that he, thereafter, diligently took each necessary preliminary step structured in the state employee's statutory grievance process, including the submission of the dispute to the State Employees Appeals Board on November 9, 1973.[1]

Prior to the actual submission of the dispute to the Appeals Board, but after the initiation of the grievance procedure, Brogan, at the suggestion of the Commissioner of Commerce and Industry, had applied for voluntary retirement at age sixty in accordance with the provisions of 5 M.R.S. A., § 1121. By the time his appeal reached the Appeals Board, the appellee's request for a service retirement allowance had been granted and he was receiving benefits as a retired state employee.

Before the Appeals Board the Department sought dismissal of the appeal on the ground the Board had no jurisdiction, since Brogan was no longer a state employee at the time the appeal to it was perfected. After hearing, the Appeals Board, on March 19, 1974 decided both the jurisdictional issue and the merits of the grievance in favor of the appellee and ordered Brogan's reinstatement in his employment together with payment of back salary.

Aggrieved by this administrative decision, the Department, on April 16, 1974, filed its complaint in the Superior Court (Kennebec County) seeking review of the Appeals Board's order pursuant to Rule 80B, M.R.C.P. On the issue of jurisdiction which was properly before him, (*State Board of Education v. Coombs*, 1973, Me., 308 A.2d 582), the Justice of the Superior Court agreed with the position of the Appeals Board to the effect that jurisdiction of the Board still existed, notwithstanding that, at the time Brogan filed his appeal with the Board from the adverse ruling of the Director of Personnel, he was then a discharged employee and had previously taken voluntary retirement under 5 M.R.S. A., § 1121. The Department appeals to this Court from the dismissal of its 80B complaint in the Superior Court. We deny the appeal.

---

* Weatherbee, J., sat at argument and participated in consultation, but died prior to preparation of opinion.

1. We note that, while the reference dispute was being processed in its preliminary stages,

5 M.R.S.A., § 753 was amended by P.L.1973, c. 493 which became effective October 3, 1973. Such change as was made in the State Employee's Grievance Procedure is immaterial for our present purposes.

The Department's argument rests on a literal construction of 5 M.R.S.A., §§ 752, 753, which provide in pertinent part as follows:

Section 752. Mediation authority

"The board [State Employees Appeals Board] shall have the authority to mediate the final settlement of all grievances and disputes between individual *state employees,* both classified and unclassified, and their respective state agencies, except in matters of classification and compensation. All complaints between a *state employee* and the state agency by which he is employed shall be made and heard 'in the manner provided by this chapter for the mediation and settlement of such complaints. . . ."

Section 753. Procedure for settlement

"A grievance or dispute between a *state employee* and the agency of the State by whom he is employed shall be entertained by the board [State Employees Appeals Board] upon the application of the employee, providing there shall have been compliance with the following requirements: . . .." (Emphasis added in each section)[2]

◼ It is true that, technically speaking, Brogan ceased to be a state employee from the time the termination of his employment by the Department became effective on August 31, 1973. But, it is equally obvious that the Legislature did not intend to use the word "employee" as it is traditionally and ordinarily understood in every day conversation and usage. To interpret the term "employee" as requiring the existence of the employer-employee relationship between a former employee grievance-claimant and his former employer during the whole course of the mediation process to

the time the appeal reaches the Appeals Board would mean that the Legislature had given state employees a remedy whereby they could contest wrongful discharges from employment only to have that remedy negated by the very fact of the discharge itself. This would be contrary to the clear intent of the Legislature to minimize labor disputes within the ranks of state employees by creating a system under which such disputes might be settled expeditiously, inexpensively and finally. *State Board of Education v. Coombs,* 1973, Me., 308 A.2d 582, at 585.

◼ "[T]he real purpose and intent of the Legislature will prevail against the general words which it used when, having regard to the object to be secured, exact adherence to verbiage obviously would lead to injustice. . . . The intent of the Legislature, as expressed in the statute, and interpreted in the light of the apparent purpose of the legislation, shall govern, although such intent seemingly be at variance with the imprinted words." *Stewart v. Small,* 1920, 119 Me. 269, 274, 110 A. 683, 685. The obvious intention of a statute, and not its literal import, is to govern. *In Re Petition of Penobscot Lumbering Association,* 1899, 93 Me. 391, 395, 45 A. 290.

The language of a statute must be so interpreted as to carry the obvious purpose which the Legislature had in mind when it enacted the legislation and the literal meaning of the language employed must give way if otherwise the legislative policy and goal will be frustrated. *Emple Knitting Mills, Aplt. v. City of Bangor,* 1959, 155 Me. 270, 274, 153 A.2d 118.

As stated in *National Labor Relations Board v. Hearst Publications,* 1944, 322 U.S. 111, 124, 64 S.Ct. 851, 857, 88 L.Ed. 1170, the word "employee" as used in the

---

2. The statute then provides the several preliminary steps to be followed by the aggrieved state employee prior to the submission of his grievance to the board, such as an attempt to adjust the dispute with the employee's immediate supervisor through oral communication; the subsequent presentment of the grievance in writing to the supervisor, if not previously adjusted; an appeal by the employee, if necessary, to the department head; if a classified employee, then, if need be, an appeal to the Director of Personnel.

National Labor Relations Act was not intended by Congress to be a word of art with reference only to the immediate technical relation of employer and employee. Rather, the scope of its concept is delineated from the context of the statute, which must be read in the light of the mischief to be corrected and the end to be attained.

It is true that the Federal Act expressly encompasses as employees persons "whose work has ceased as a consequence of, or in connection with any current labor dispute or because of any unfair labor practice." We believe that this definitional provision is merely an explicit enumeration of a class of persons already covered and dictated by the implicit policies of the Labor Act which look to the preservation of industrial peace. See *Social Security Board v. Nierotko,* 1946, 327 U.S. 358, 66 S.Ct. 637, 90 L.Ed. 718.

Our Legislature, undoubtedly, thought that it was unnecessary to use explicit language in the State Employees Mediation and Arbitration Act which stated that, for the purpose of pursuing their grievance remedy through the statutory settlement procedure to a final adjudication of the dispute by the Appeals Board, state employees do not lose their status as such by reason of their discharge from employment.

The fact that the appellee, Brogan, was no longer in the employ of the Department at the time his appeal reached the Appeals Board did not deprive him of standing before the Board, nor did it negate the authority of the Board to consider the grievance. Employee discharges are the classic kinds of problems regularly and routinely considered by boards of mediation and arbitration. *Woodcock v. Atlass,* 1976, Me., 359 A.2d 69, at page 71, n. 3.

In similar circumstances, the Supreme Court of the United States, in relation to the powers of the National Railway Adjustment Board under the Railway Labor Act, 45 U.S.C.A., § 151 et seq., in *Pennsylvania Railroad Company v. Day,* 1959, 360 U.S. 548, 551–552, 79 S.Ct. 1322, 1324, 3 L.Ed.2d 1422, said:

"There is nothing in the Act which requires that the employment relationship subsist throughout the entire process of administrative settlement. The purpose of the Act is fulfilled if the claim itself arises out of the employment relationship which Congress regulated."

■ Nor, does the fact that an employee has obtained other employment or, as in this case, has applied for and obtained retirement benefits, *necessarily* affect his status as an employee under the Act in so far as the Appeals Board's jurisdiction to hear and settle the dispute is concerned. Such a conclusion is mandated when we realize that one of the elements of a discharged employee's claim is that for back pay.

■ It is the rule in Maine that an employee seeking to recover loss of wages due to a wrongful discharge from employment has an obligation to mitigate damages.

"An employee wrongfully discharged may in an action for the purpose recover as damages the difference between the amount which would after his discharge accrue to him under the contract if continued in force and the amount which during the remainder of the term he earned, *or by reasonable diligence might have earned.*" *Harrington v. Empire Cream Separator Company,* 1921, 120 Me. 388, 390, 115 A. 89, 90 (Emphasis added).

To the same effect, see *Sutherland v. Wyer,* 1877, 67 Me. 64, 69; *Stevens v. School Board,* 1973, 296 Minn. 413, 208 N. W.2d 866, 868.

We believe the application of the rule of mitigation of damages as an offset against the recovery of back pay in the case of wrongful discharges from employment comes within the policy and intendment of the Legislature to preserve industrial peace

under the Act and that the Legislature never meant to penalize the discharged employee, who seeks temporary means of support and accepts remunerating employment during the pendency of the grievance procedure, by way of a forfeiture of the right to recover as damages the lost wages less the interim earnings.

The facts of the instant case indicate an intent on the part of the appellee, Brogan, in applying for retirement benefits, merely to provide temporary means of support and to mitigate damages. The Board was satisfied that Brogan did not elect to abandon his right to reinstatement and/or back pay. His vigorous pursuit of his dispute at every step of the grievance procedure is wholly inconsistent with an election on his part to forget the same.

There was no election of remedies in the instant case as a matter of law. An election occurs when a person seeks redress of a wrong at different times upon the truth of two inconsistent and repugnant positions according to the promptings of his own interest. See *Carey v. Cyr and Denico*, 1955, 150 Me. 405, 407, 113 A.2d 614.

Under 5 M.R.S.A., § 1123 a retiree can leave that status and return to his former employment. This being so, temporary retirement for the purpose of receiving benefits need not be necessarily a final severance of the employer-employee relationship under 5 M.R.S.A., §§ 751–753.

In an analogous situation, the New Mexico Court in *State ex rel. Brown v. Hatley*, 1969, 80 N.M. 24, 450 P.2d 624, reached the same result.

"A resignation by a teacher is in the nature of a termination of employment. However, it is ineffective without the necessary intent on the part of the incumbent to sever the relationship of employer and employee. . . . Actually, it is conceded that Mrs. Brown's resignation was submitted only for the purpose of obtaining disability retirement. The superintendent knew that was the purpose, and the circumstances of the resignation, such as her illness, agreement to transfer, and the like, are inconsistent with a true resignation. When a teacher submits a resignation and the parties understand it is submitted for a purpose other than termination of employment, it is ineffective as a resignation." Id., 450 P.2d at 626.

See also *Sherman v. Board of Trustees*, 1935, 9 Cal.App.2d 262, 49 P.2d 350.

The Department's 80B complaint was properly dismissed and, therefore, the entry will be

Appeal denied.

All Justices concurring.