Dorothy M. **RUBIN**

v.

**BOARD OF ENVIRONMENTAL PROTECTION.**

Supreme Judicial Court of Maine.

Argued April 26, 1990.
Decided July 25, 1990.

Peter J. Rubin (orally), Diane S. Lukac, Bernstein, Shur, Sawyer & Nelson, Portland, for plaintiff.

Dennis J. Harnish (orally), Asst. Atty. Gen., Augusta, for defendant.

Before McKUSICK, C.J., and ROBERTS, WATHEN, GLASSMAN, CLIFFORD, HORNBY * and COLLINS, JJ.

ROBERTS, Justice.

Dorothy M. Rubin appeals a Superior Court judgment (Sagadahoc County) affirming a decision of the Board of Environmental Protection denying her a permit and a variance for a house addition she had already built without a permit. The Board appeals the court's dismissal of its counterclaim for an injunctive order that she remove the addition. We affirm the judgment affirming the Board's decision but we vacate the court's order dismissing the counterclaim.

In 1980–81, Dorothy Rubin built an addition to her home on Hunnewell Beach in Phippsburg without first obtaining a permit from the Board. At that time, the Coastal Wetlands Act, 38 M.R.S.A. § 471,[1] prohibited new construction on sand dunes without a permit. In August 1983 Rubin filed an application with the Board for an after-the-fact permit. The Board denied the application. In the first of two consolidated actions, Rubin filed a complaint for review and independent relief. The Board filed a counterclaim for an order requiring Rubin to remove the addition.

While this action was pending, the sand dune rules were amended to provide for variances. Rubin filed for a variance, which was denied. Rubin then filed another complaint to challenge the denial of the variance. The two cases were consolidated, and in August 1987 the court (*Fritzsche, J.*) ordered the entry of judgment for the Board on Rubin's complaints. In July 1989 the court (*Perkins, J.*) granted Rubin's motion to dismiss the Board's counterclaim.

## I. Rubin's Appeal

We review directly the Board's decisions denying the permit and variance, rather than the court's decision and order, for legal error. *Robinson v. Bd. of Trustees of the Maine State Retirement System,* 523 A.2d 1376, 1378 (Me.1987). In denying the permit, the Board noted, among other findings, that the addition was located on a frontal dune, and Chapter 355, Section 2(B)(2) of the Department of Environmental Protection's Coastal Sand Dune Rules

---

* Hornby, J., sat at oral argument and participated in the initial conference but resigned before this opinion was adopted.

1. P.L.1979, c. 504 § 1. The sections of the Coastal Wetlands Act discussed in this opinion, 38 M.R.S.A. §§ 471, 472, 474 and 475, were repealed and recodified, with changes, at 38 M.R.S.A. §§ 480–C, B, D–E and R, respectively. P.L.1987, c. 809 §§ 1–2 (1989 and Supp.1989).

prohibited new construction on frontal dunes (defined in the rules as the most seaward ridge of sand vegetated with beach grass).

Rubin contends that rule 2(B)(2) was adopted in excess of the Board's authority because, by prohibiting all construction on frontal sand dunes, it contravened 38 M.R.S.A. § 474(2). Section 474(2) stated in part:

If the applicant for a sand dunes permit demonstrates to the satisfaction of the board ... that the proposed activity will not unreasonably interfere with existing recreational or wildlife uses; unreasonably interfere with the natural supply or movement of sand within or to the sand dune system; unreasonably increase the erosion hazard to the sand dune system; or cause an unreasonable flood hazard to structures built in, on or over any coastal sand dune or neighboring property, the board ... shall grant the permit upon such terms as are necessary to insure that the proposed activity will comply with the foregoing standards.

P.L.1979, c. 504 § 3.

▮ Rubin argues that the statute requires a case-by-case review of each applicant's permit to determine whether the statutory standards have been met. We conclude, however, the rule prohibiting construction on frontal dunes is consistent with section 474(2). In adopting rule 2(B)(2), the Board made findings sufficient to support its determination that in frontal dunes no new construction could meet the test set forth in section 474(2). Rubin has not established any error in the Board's findings.

▮ In denying Rubin a variance, the Board made several findings, among them that Rubin had not demonstrated by clear and convincing evidence that the property is not likely be damaged by storms in the next 100 years. Rule 4(I)(2) of the sand dune rules provides in part that to obtain a variance the applicant must demonstrate by clear and convincing evidence that even if the proposed variance is granted, all other provisions of the sand dune rules will be met. Two of the other provisions are rules 2(A)(1) and 2(A)(2). These state that

projects must have a minimal impact on the immediate site and the sand dune system, and projects are not permitted if, within 100 years, they may reasonably be expected to be damaged as a result of changes in the shoreline. Rubin argues that rules 4(I)(2), 2(A)(1) and 2(A)(2) in effect leave in place the prohibition on frontal dune construction. For the same reasons the rule prohibiting new construction does not contravene the statute, these rules do not and the Board did not exceed its authority in adopting them.

## II. The Board's Appeal

The authority the Board relied on to seek the injunction is set forth in 38 M.R.S.A. § 348(1) (1989), which states in part: "In the event of a violation of any provision of the laws administered by the Department of Environmental Protection or of any order, regulation, license, permit, approval or decision of the Board of Environmental Protection ..., the Attorney General may institute injunction proceedings to enjoin any further violation thereof...."

Violations of the Coastal Wetlands Act were defined under 38 M.R.S.A. § 475, which stated in part: "A violation is defined as any filling, dredging, draining, depositing, altering, erecting or removal of materials which takes place in coastal wetlands contrary to the provisions of a valid permit or without a permit having been issued...." P.L.1975, c. 595 § 3. This section did not expressly include construction on sand dunes as a violation. In 1983, section 475 was amended to apply to coastal sand dunes as well. P.L.1983, c. 566, § 30.

▮ The court dismissed the Board's counterclaim on the basis that Rubin's construction without a permit, while prohibited, did not constitute an enforceable violation under section 475, and the 1983 amendment, which made the construction an enforceable violation, should not be applied retroactively. This interpretation, however, fails to give effect to the prohibition set forth in section 471. The court must interpret statutes to avoid contradictory or

illogical results, *see State v. Hopkins*, 526 A.2d 945, 950 (Me.1987) or results inimical to the public interest, *see Schwanda v. Bonney*, 418 A.2d 163, 166 (Me.1980). We must interpret a statute in a manner that preserves the meaning of all of the statute's parts. *Maine State Society for the Protection of Animals v. Warren*, 492 A.2d 1259, 1263 (Me.1985).

 Moreover, because the legal significance of Rubin's activities was not changed by the amendment, in that construction without a permit was prohibited before and after the amendment, the amendment concerned procedure rather than substance, and may be applied retroactively. *See Schlear v. Fiber Materials, Inc.*, 574 A.2d 876 (Me.1990); *Michaud v. Northern Maine Medical Center*, 436 A.2d 398, 400–401 (Me.1981). Although the Board asserted its authority to seek the injunction under 38 M.R.S.A. § 348, the fact that the Attorney General is entitled under the common law to seek injunctive relief against violations also indicates that the 1983 amendment simply confirms the pre-existing authority. *See Superintendent of Insurance v. Attorney General*, 558 A.2d 1197, 1199–1200 (Me.1989).

The entry is:

Judgment affirming the Board of Environmental Protection affirmed.

Judgment dismissing the Board's counterclaim vacated.

Remanded for further proceedings consistent with the opinion herein.

All concurring.