**Lynne M. SENTY**

v.

**BOARD OF OSTEOPATHIC EXAMINATION AND REGISTRATION.**

Supreme Judicial Court of Maine.

Argued June 18, 1991.
Decided July 9, 1991.

Sumner H. Lipman, Kathryn Vezina, Peter Bickerman (orally), Lipman & Katz, Augusta, for plaintiff.

Kenneth W. Lehman (orally), Crombie J.B. Garrett, Thomas Warren, Asst. Attys. Gen., Augusta, for defendant.

Before McKUSICK, C.J., and ROBERTS, WATHEN, GLASSMAN, COLLINS and BRODY, JJ.

BRODY, Justice.

The Board of Osteopathic Examination and Registration (Board) appeals from an order of the Superior Court (Kennebec County, *Chandler, J.*) compelling the Board to issue a license to practice osteopathic medicine in Maine to Lynne M. Senty, D.O. The Board contends that the court erred in ruling that the Board had no authority to consider evidence of professional incompetence in deciding whether to issue Dr. Senty a license. We agree and vacate the judgment.

Dr. Senty graduated in 1989 from the University of Osteopathic Medicine and Health Sciences in Des Moines, Iowa, a school accredited by the American Osteopathic Association (AOA). Following graduation, she successfully completed a one-year, AOA-approved internship program at Waterville Osteopathic Hospital and received her diplomate certificate from the National Board of Osteopathic Medical Examiners after passing the national licensing examination.

In the process of considering her application for permanent licensure in June of 1990, the Board discovered that Dr. Senty had earned questionable competence ratings during her internship. As a result, the Board expressed reservations regarding her licensure and decided to withhold approval of a permanent license pending an investigation. The Board did, however, grant her a temporary license to enable her

to practice in a two-year family practice residency program at Central Maine Medical Center in Lewiston.

In January of 1991, after an investigation was completed and less than a week before the meeting at which the Board was to reach a preliminary decision on whether to issue her a full license, Dr. Senty filed a complaint in the Superior Court pursuant to 5 M.R.S.A. §§ 11001–11008 (1989) and M.R.Civ.P. 80C. She contended, among other things, that the Board exceeded its statutory authority in refusing for nearly six months to take official action on her application for permanent licensure. Following the Board's preliminary denial of her permanent license application on January 17, 1991, Dr. Senty amended her complaint to seek to enjoin the Board from further "interfering with a license being granted" her.

The court heard Dr. Senty's motion for injunctive relief on February 22, 1991. She argued that the language of 32 M.R.S.A. § 2572 (1988) required the Board to issue an unconditional license to her. The Board, on the other hand, argued that the language of 32 M.R.S.A. § 2591–A (1988 & Supp.1990) allowed it to "refuse to issue" an initial license on any of several grounds listed in that section, including professional incompetence. In its decision and order dated March 7, 1991, the court agreed with Dr. Senty that section 2572 mandated the issuance of a license upon successful completion of the Board-prescribed examination and that section 2591–A was inapplicable to initial license approvals. The court permanently enjoined the Board from failing to issue a license to Dr. Senty and directed the Board to issue her a license forthwith.

The Board filed a timely notice of appeal along with a motion for a stay pending appeal. After the Superior Court denied the Board's motion, the Board sought a stay pending appeal from this court. We granted the stay and ordered an expedited briefing schedule.

The Board argues that the court erred as a matter of law in ruling that the Board had no discretion to consider evidence of professional incompetence in deciding whether to issue Dr. Senty a permanent medical license. The Board contends that the court misconstrued the preliminary requirements contained in 32 M.R.S.A. §§ 2571 (Supp.1990) and 2572 to be the sole requirements for licensure. The Board also submits that its longstanding interpretation of the relevant statutes is reasonable and consistent with the purpose of the osteopathic physician licensure law and that the court's order, by contrast, creates irreconcilable inconsistencies among the statutes applicable to licensure decisions by the Board. We agree.

In order to engage in the practice of osteopathic medicine in Maine, a person must apply to the Board for a certificate of licensure. 32 M.R.S.A. § 2571. The applicant is required to present to the Board a diploma granted by an osteopathic college or university accredited by the AOA along with evidence of having completed an internship of at least twelve months in a hospital approved by the AOA. *Id.* In addition, the applicant must pass an examination "in such subjects as the board may deem necessary, including osteopathic theories and methods, to determine the competency of the candidate to practice osteopathic medicine and surgery in the State." *Id.* § 2572. It is not disputed that Dr. Senty met all of the preliminary requirements of sections 2571 and 2572.

Section 2572 further provides:

If the examination is passed in a manner satisfactory to the board, the board *shall* issue to the applicant a certificate granting him the right to practice osteopathic medicine in this State.

*Id.* (emphasis added). At the same time, section 2591–A provides in pertinent part:

The following shall be grounds for an action to *refuse to issue*, modify, suspend, revoke or refuse to renew the license of a person licensed under this chapter:

. . . .

E. Incompetence in the practice for which he is licensed. A licensee shall be deemed incompetent in the practice if the licensee has:

(1) Engaged in conduct which evidences a lack of ability or fitness to discharge the duty owed by the licensee to a client or patient or the general public; or

(2) Engaged in conduct which evidences a lack of knowledge, or inability to apply principles or skills to carry out the practice for which he is licensed.

*Id.* § 2591–A(2)(E) (emphasis added).

The question at issue is whether these statutes give the Board the authority to consider allegations of an applicant's professional incompetence when deciding whether to issue a permanent license to practice osteopathic medicine in Maine. The trial court ruled that the Board was not so empowered: "[S]trange as it may seem, the applicable statutes give the Board absolutely no discretion with regard to the issuance of a license to practice osteopathic medicine once an applicant has met certain preliminary requirements." The court found section 2572 "mandatory in its language" and section 2591–A applicable "only to the Board's dealing with licensees and not to an initial licensing."

■ The court erred in its restrictive interpretation of section 2572. There is no question that the Legislature's use of the word "shall" provides some support for the court's conclusion since, as Dr. Senty points out, the word "shall" generally signals a mandatory intent. "The intention of the legislature, however, should be controlling and no formalistic rule of grammar or word form should stand in the way of carrying out the legislative intent." 1A N. Singer, *Sutherland Statutory Construction* § 25.03, at 441–42 (4th ed. 1985); *accord Anderson v. Commissioner of Dep't of Human Servs.*, 489 A.2d 1094, 1097–98 (Me.1985). In ruling as it did, the court did not recognize that the Legislature in several other enactments has authorized the Board to consider more than the preliminary requirements set forth in sections 2571 and 2572.

The court's interpretation conflicts, for example, with 5 M.R.S.A. §§ 5301–5303 (Supp.1990). Section 5301 permits a licensing agency to take into consideration criminal history record information relating to certain convictions when determining eligibility for the granting of any occupational license. Each of these categories of convictions pertains to applicants for osteopathic medical licensure, and section 5301(2)(E) expressly authorizes the Board to consider in connection with a license application criminal history record information pertaining to "[c]onvictions ... which involve sexual misconduct by an *applicant* or licensee of ... the Board of Osteopathic Examination and Registration." 5 M.R.S.A. § 5301(2)(E) (emphasis added). Pursuant to section 5302, if the Board determines that the convicted "*applicant*, licensee, registrant or permit holder ... has not been sufficiently rehabilitated to warrant the public trust," the Board may refuse to grant a license. *Id.* § 5302(1) (emphasis added). Section 5303 provides that "[t]here is no time limitation for consideration of a registrant's, an *applicant*'s or licensee's conduct which gave rise to the criminal conviction if that conduct is otherwise a ground for disciplinary action." *Id.* § 5303(2)(C) (emphasis added).

The court's reading of section 2572 is also at odds with 10 M.R.S.A. § 8003 (Supp. 1990). This provision authorizes the Board to "[i]mpose conditions of probation upon an *applicant*" for any "violation of applicable laws, rules or conditions of licensure or registration." 10 M.R.S.A. § 8003(5)(A–1)(4) (emphasis added). Furthermore, "[p]robation may include such conditions as ... mandatory professional or occupational supervision of the *applicant.*" *Id.* (emphasis added). It would be illogical for the Legislature to have enabled the Board to impose mandatory professional or occupational supervision of an applicant for osteopathic medical licensure if the Legislature had intended the Board to have, in the court's words, "absolutely no discretion" in the first instance to exercise judgment and evaluate the competence of that applicant.

Section 8003 also enables the Board to "execute a consent agreement which resolves a complaint or investigation without further proceedings" and provides further that "[c]onsent agreements may be entered

into only with the consent of: the *applicant*, licensee or registrant," among others. *Id.* § 8003(5)(B) (emphasis added). If the Board were to have no discretion regarding applicants for licensure, it is difficult to comprehend why the Legislature would have provided for applicants to execute consent agreements to resolve a complaint or investigation without further proceedings.

Finally, the court's interpretation conflicts with other statutory enactments administered by the Board. The court's ruling is contrary to the requirement in 32 M.R.S.A. § 2571 that all applicants "provide such reasonable and proper facts as the board in its application may require." Certainly, as the Board points out, the Legislature could not have intended that the Board be precluded from following up on issues raised by an applicant's responses or from taking appropriate action as a result of that followup where necessary to protect the public interest. The court's ruling is also inconsistent with the discretion implicit in 32 M.R.S.A. § 2562 (1988), which provides that "[n]o certificate to practice osteopathic medicine shall be granted, except on an affirmative vote of at least 4 members of the board." Accordingly, we conclude that the Legislature intended the Board to exercise broader discretion with respect to licensure applicants than the court found.

The issue then remains, does that broader discretion encompass the Board's taking into consideration evidence of a licensure applicant's professional incompetence? Although some support for this notion is found in 10 M.R.S.A. § 8003(5)(A–1)(4), which authorizes the Board to impose conditions of probation upon an applicant, the more relevant, albeit inartfully drafted, statutory provision is 32 M.R.S.A. § 2591–A(2)(E), quoted in pertinent part earlier. Despite the "refuse to issue" language, the statute, and particularly the incompetence provision, appears to apply only to licensees.

Nevertheless, in construing a statute, we must remember that it is the obvious intention of the statute, not necessarily its literal import, that governs. *State Dev. Office v. State Employees Appeals Bd.*, 363 A.2d 688, 690 (Me.1976). "The language of a statute must be so interpreted as to carry the obvious purpose which the Legislature had in mind when it enacted the legislation and the literal meaning of the language employed must give way if otherwise the legislative policy and goal will be frustrated." *Id.* We must conclude that the Legislature did not intend unreasonable or absurd consequences, or results inimical to the public interest, and must interpret a statute to avoid such contradictions. *Rubin v. Board of Environmental Protection*, 577 A.2d 1189, 1191–92 (Me.1990).

The "refuse to issue" language of section 2591–A first appeared in a 1983 amendment that was part of an act to standardize the disciplinary proceedings of a number of health profession licensing boards. P.L.1983, ch. 378, § 38. Even so, it is clear that the Board earlier had authority to refuse to issue a license based on a finding of incompetence. A predecessor of section 2591–A provided in pertinent part:

> **1. Grounds.** The following complaints or allegations, after investigation, shall be grounds for convening the board in order to hear the same and allow the accused to respond, and shall be considered grounds for censure, probation, suspension or revocation of a license:
>
> . . . .
>
> **C.** Gross malpractice or the inability to practice osteopathic medicine with reasonable skill and safety. . . .
>
> . . . .
>
> **2. Disposition.** Upon the finding of any one or more of the causes enumerated above, the Board of Osteopathic Examination and Registration may:
>
> . . . .
>
> **B.** Permanently *withhold issuance* of a license.
>
> .  .  .  .  .

32 M.R.S.A. § 2591 (1978) (emphasis added), *amended by* P.L.1978, ch. 694, §§ 599–600. Furthermore, at the same time as the Board had the clear authority to withhold issuance of a license because of professional incompetence, the pertinent part of sec-

tion 2572 was virtually identical to the current version and certainly no less "mandatory in its language": "If such examination is passed in a manner satisfactory to the board, the board shall issue to the said applicant a certificate granting him the right to practice osteopathic medicine in this State." *Id.* § 2572 *amended by* P.L.1983, ch. 378, § 36.

Although the legislative history of section 2591–A(2) is not conclusive, there is little doubt that the overriding legislative purpose behind the licensure laws has been to enable the Board to exercise its authority to protect the public from incompetent, drug impaired, mentally ill, or other persons who, if licensed, would pose a risk of harm to patients. It would be inconsistent with this purpose if the Board were required to license a physician without regard to allegations of medical incompetence, or to have to grant a license to the applicant with one hand only in order to revoke it from the new licensee with the other.

It is true, as Dr. Senty argues, that the Legislature expressed itself more clearly in regard to initial licensure of allopathic physicians and surgeons. The allopathic physician licensing statutes expressly authorize the Board of Registration in Medicine to apply the same criteria for initial license issuance as for discipline of licensees:

> No applicant may be registered unless the board finds that the applicant is qualified and that there exists no cause, as set forth in section 3282–A, which would be considered grounds for disciplinary action against a licensed physician or surgeon.

32 M.R.S.A. § 3271(5) (1988). It does not follow, however, that the lack of such language in the statutes governing the licensure of osteopathic physicians signals the Legislature's intention to grant less authority to the Board. That argument is not persuasive. Clearly, the Legislature would not have determined that the public was less deserving of protection from one category of incompetent physician than from another. More likely, the Legislature simply has not had the same occasion to revisit

and clarify the statute pertaining to osteopathic physicians as it had in regard to the statute pertaining to allopathic physicians. *See* P.L.1977, ch. 388, § 3.

■ Moreover, an administrative agency's construction of a statute administered by it is entitled to great deference and will be upheld unless the statute plainly compels a contrary result. *Lucas v. Maine Comm'n of Pharmacy,* 472 A.2d 904, 907 (Me.1984). Clearly, the Board's interpretation of section 2572 as requiring consideration of the factors enumerated in section 2591–A is reasonable and consistent with the purpose of the osteopathic physician licensure law. We hold, therefore, that the Board properly may consider the same factors that would be grounds for disciplinary action against a licensed osteopathic physician or surgeon when deciding whether to issue an initial license to an applicant.

■ Dr. Senty argues that the Board failed to follow proper procedure in its handling of her license application and cites that failure as an alternative ground to uphold the court's order of injunctive relief. We disagree. Dr. Senty was not denied procedural due process in this proceeding. "The constitutional validity of denying a license rests upon the same ground as the constitutional validity of revoking a previously granted license. In each case constitutional due process as to 'hearing' is implicit." *Watson v. State Comm'r of Banking,* 223 A.2d 834, 838 (Me.1966). It is essential to a party's right to procedural due process that he be given notice of and an opportunity to be heard at any proceeding in which such property rights are at stake. *Board of Registration in Medicine v. Fiorica,* 488 A.2d 1371, 1375 (Me.1985).

■ Although Dr. Senty characterizes the Board's action at its January 17, 1991, meeting as a *final* denial of her license application with neither notice nor hearing, the record reveals that the denial was only preliminary. The Board was presented with Dr. Senty's completed application file at that time. The Board's options at the meeting were to grant her a full medical license, to request further investigation, or to preliminarily deny her application and

enable her to request an adjudicatory hearing on the merits of her application for full medical licensure. The Board appropriately determined that, given the allegations presented that raised an issue as to Dr. Senty's competence, it could not make a decision as to permanent licensure without first conducting a hearing to explore those allegations.

The Board's preliminary denial of her permanent license application procedurally enabled Dr. Senty. to request a hearing within thirty days, and by letter dated February 1, 1991, she did request a hearing. But for the court's order granting her motion for an injunction, the Board would have held the adjudicatory hearing on April 18, 1991. After the order was issued, Dr. Senty through counsel declined to proceed with the hearing concerning her competence, notwithstanding the fact that this appeal was pending. On this record, we find no violation by the Board of Dr. Senty's right to due process.

The entry is:

Judgment vacated.

Case remanded to the Superior Court with instructions to remand to the Board of Osteopathic Examination and Registration for further proceedings consistent with the opinion herein.